

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-2-2007

# Wachtel v. Health Net Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-3031

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Wachtel v. Health Net Inc" (2007). *2007 Decisions*. Paper 1177.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1177

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 06-3031/3032

_____

ZEV WACHTEL; LINDA WACHTEL, individually and on
behalf of their minor children, Tory, Jesse and Brett Wachtel,
and on behalf of all others similarly situated,

v.

HEALTH NET, INC.; HEALTH NET OF THE
NORTHEAST, INC.;
HEALTH NET OF NEW JERSEY, INC.

(District of New Jersey D.C. 01-cv-04183)

RENEE MCCOY, individually and on behalf of all others
similarly situated

v.

HEALTH NET, INC., HEALTH NET OF THE
NORTHEAST,
INC.; HEALTH NET OF NEW JERSEY, INC.

(District of New Jersey D.C. 03-cv-01801)

Health Net, Inc.; Health Net of the Northeast, Inc.;
Health Net of New Jersey, Inc.,

Appellants.

———————————

On Appeal from the United States District Court
for the District of New Jersey
District Court Nos. 01-cv-04183; 03-cv-01801
District Judge: Hon. Faith S. Hochberg

———————————

Argued on December 13, 2006

Before: SMITH and ROTH, Circuit Judges
YOHN*, District Judge

(Opinion Filed April 2, 2007)

Herve Gouraige, Esquire
Epstein, Becker & Green
Two Gateway Center
12th Floor
Newark, NJ    07102

———————————

*The Honorable William H. Yohn, Jr., Senior United
States District Judge for the Eastern District of Pennsylvania,
sitting by designation.

Jay H. Calvert, Jr., Esquire
Peter Buscemi, Esquire **(ARGUED)**
Joseph B.G. Fay, Esquire
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, D.C.    20004

John J. Gibbons, Esquire
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ   07102

Counsel for Appellants Health Net, Inc.; Health Net of the Northeast, Inc.; Health Net of New Jersey, Inc.

Stanley M. Grossman, Esquire
D. Brian Hufford, Esquire
Robert J. Axelrod, Esquire
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue
New York, NY   10017

Stuart M. Feinblatt, Esquire
Barry M. Epstein, Esquire
Barbara Gail Quackenbos, Esquire
A. R. Pearlson, Esquire **(ARGUED)**
Sills, Cummis, Epstein & Gross
One Riverfront Plaza
Newark, NJ    07102

Counsel for Appellees

Arlin M. Adams, Esquire
Bruce P. Merenstein, Esquire
Schnader, Harrison, Segal & Lewis LLP
1600 Market Street
Suite 3600
Philadelphia, PA   19103

Stephanie Kanwit, Esquire
Deborah Reichmann, Esquire
America's Health Insurance Plans, Inc.
601 Pennsylvania Avenue, N.W.
South Building, Suite 500
Washington, D.C.   20004

Counsel for Amicus-Appellant America's Health
Insurance Plans, Inc.

Jay E. Sushelsky, Esquire
AARP Foundation Litigation
Melvin R. Radowitz, Esquire
American Association of Retired Persons
601 E. Street, N.W.
Washington, D.C.   20049

Counsel for Amicus-Appellee American Assoc.
of Retired Persons

4

## OPINION

**ROTH**: <u>Circuit Judge:</u>

This appeal requires us to consider the application of a common-law evidentiary rule known as the "fiduciary exception" to the attorney-client privilege. Under this exception to the privilege, certain fiduciaries who obtain legal advice in the execution of their fiduciary obligations are precluded from asserting the attorney-client privilege against their beneficiaries. Although the fiduciary exception has been adopted by a number of other federal courts of appeals, we have not yet had the opportunity to decide whether the rule should apply within our circuit. We decline to make that decision today because we hold that, even if we were to adopt the fiduciary exception, the exception would not apply to the defendants in this case. For this reason, we will vacate the order of the District Court requiring the production of otherwise privileged attorney-client communications.

## I. **Factual and Procedural Background**

Health Net of New Jersey, Inc. (HN-NJ) sells and maintains health insurance policies for employee benefit plans. The company offers a variety of policies, covering services by health maintenance organizations, preferred provider organizations, and point-of-service policies. HN-NJ is a

subsidiary of Health Net of the Northeast, Inc. (HN-NE). Health Net, Inc. (HNI) is the corporate parent not only of HN-NJ and HN-NE but also of other subsidiary insurance companies that provide medical benefits to participants in benefit plans established under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Although certain policy formulation and administrative services are shared among the Health Net companies, a subsidiary is responsible for deciding claims in accordance with these policies and for paying claims to participants from the subsidiary's assets. HNI and its subsidiaries do not hold or manage the assets of their customer benefit plans. Rather, the Health Net subsidiaries sell insurance policies to the plans. When a plan beneficiary submits a claim, the subsidiary will process the claim and, if appropriate, pay the beneficiary from the subsidiary's own funds. Similarly, when HNI or any of the subsidiaries obtains legal advice, counsel is paid from HNI's or the subsidiary's funds. Neither HNI nor any of the subsidiaries is a plan administrator or trustee for any of the benefit plans.

The plaintiffs are beneficiaries of two different employee benefit plans that purchased point-of-service policies from HN-NJ. Under the plaintiffs' policies, health care providers are classified as in-network or out-of-network. When beneficiaries obtain care from out-of-network providers, they must pay a higher share of the cost than they would had they obtained care from in-network providers. In determining what percentage of an out-of-network charge HN-NJ will pay, HN-NJ will look to the Usual, Customary, and Reasonable (UCR) charge for the service provided. In defining UCR charges, Health Net companies rely on data contained in certain national databases.

The plaintiffs allege that HN-NJ relied on antiquated data and improper methods to define UCR charges, thereby violating both New Jersey law and the Health Net companies' duties as statutory fiduciaries under ERISA. The plaintiffs filed suit under § 502 of ERISA to recover benefits and to redress the alleged violations of fiduciary duties and failure to supply information to beneficiaries.

On August 5, 2004, the District Court for the District of New Jersey consolidated the plaintiffs' cases and granted class certification to a national class of beneficiaries. HNI, HN-NE, and HN-NJ (collectively, Health Net) appealed the certification. On September 27, 2005, we issued a Stay Order, requiring that the District Court "refrain from holding any trial, or entering any judgment that would have the effect of resolving any claims or issues affecting the disputed class until this Court has issued its ruling deciding the pending appeal under Rule 23(f) . . .." On June 30, 2006, we vacated the Class Certification Order and remanded for further certification proceedings.

During the pendency of the Rule 23(f) appeal, the District Court moved forward on issues of discovery. On June 24, 2005, the District Court assigned a Special Master to examine documents listed on defendants' privilege logs to determine whether the documents were discoverable. The Special Master reviewed over 4,000 documents in Health Net's first eleven privilege logs. After determining which documents were protected as work-product or privileged as attorney-client communications, the Special Master considered whether any of those documents were nonetheless discoverable pursuant to the fiduciary exception to the attorney-client privilege. He

recognized that the exception has not been considered within our circuit, but he concluded that, given the opportunity, we would adopt the fiduciary exception and apply it to Health Net. Having found that certain attorney-client communications related to fiduciary acts by Health Net and were not prepared in connection with adversarial proceedings against the beneficiaries, the Special Master ordered Health Net to produce those communications.

Health Net appealed this ruling to the District Court. In addition, HNI moved for summary judgment, arguing that it was not an ERISA fiduciary and therefore owed no fiduciary obligations to the plaintiffs. The District Court, in an order entered May 12, 2006, denied HNI's motion for summary judgment, finding that HNI exerted sufficient control over day-to-day operations at HN-NJ for the court to hold HNI liable as a fiduciary. In the same order, the District Court adopted the Report and Recommendation of the Special Master and ordered the production of all documents on Privilege Logs 1-11 which the Special Master had determined should be produced. Because of the District Court's finding regarding HNI's status as a fiduciary, this production order applied to attorney-client communications with HNI in addition to communications with the other Health Net defendants. Health Net appeals the May 12 order on the basis that the District Court wrongly applied the fiduciary exception and wrongly determined HNI's status as a fiduciary.

## II. **Jurisdiction and Standard of Review**

The District Court had jurisdiction over this case under

8

28 U.S.C. § 1331 because the plaintiffs' claims arise under § 502 of ERISA, 29 U.S.C. § 1132. We have appellate jurisdiction under 28 U.S.C. § 1291 to review the District Court's order of May 12, 2006, ordering the production of certain documents. Though not a final resolution of the case, an order for the production of documents over which a privilege is asserted is appealable as finally resolving a collateral discovery issue. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *In re Ford Motor Co.*, 110 F.3d 954, 962-63 (3d Cir. 1997). Thus, insofar as Health Net contends that the District Court improperly ordered the discovery of privileged documents, its appeal is properly before us.

HNI has also appealed the District Court's summary judgment determination regarding HNI's status as an ERISA fiduciary. Ordinarily, an order denying a motion for summary judgment is not an appealable final order; to the contrary, it is an order permitting litigation to continue. *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 168 (3d Cir. 2006). Nonetheless, HNI urges us to consider the issue and vacate the order denying summary judgment.

HNI argues that we have jurisdiction to vacate the order because the District Court, in denying HNI's motion for summary judgment, violated our Stay Order of September 27, 2005. This argument lacks merit. Our Stay Order prevented the District Court from entering judgments affecting the disputed class during the pendency of Health Net's Rule 23(f) appeal. The question whether HNI was a fiduciary is wholly independent of the question whether the class was properly

9

certified.[1]

HNI also contends that we must review HNI's fiduciary status as part of our resolution of the discovery question properly before us. However, because we hold that the disputed documents are privileged no matter how heavily involved HNI may have been in the daily operations of its subsidiaries, we do not need to consider HNI's fiduciary status. We conclude, therefore, that we do not have jurisdiction at this time to hear the appeal of the denial of summary judgment.

We exercise *de novo* review over issues of law underlying the application of the attorney-client privilege. *U.S. v. Doe*, 429 F.3d 450, 452 (3d Cir. 2005). We review the application of that law for abuse of discretion. *Id.*

## III. Discussion

We confront an issue of first impression. Although the fiduciary exception has been recognized in many of our sister circuits, *see Becher v. Long Island Lighting Co.* (*LILCO*), 129 F.3d 268, 272 (2d Cir. 1997); *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir. 1992); *Fausek v. White*, 965 F.2d 126, 132-33 (6th Cir. 1992); *Bland v. Fiatallis North Am. Inc.*,

---

[1]Moreover, HNI is the party which moved for summary judgment during the pendency of the Rule 23(f) appeal. We are not sympathetic to HNI's new position that the District Court lacked authority to consider the motion which HNI had filed.

10

401 F.3d 779, 787-88 (7th Cir. 2005); *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1415-16 (11th Cir. 1994); *In re Lindsey*, 158 F.3d 1263, 1276 (D.C. Cir. 1998), *cert. denied*, 525 U.S. 996 (1998), and even by district courts within our own circuit, *see*, *e.g.*, *Arcuri v. Trump Taj Mahal Associates*, 154 F.R.D. 97, 106 (D.N.J. 1994); *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63 (D.N.J. 1990); *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 596-98 (E.D. Pa. 1989); *Valente v. PepsiCo, Inc.*, 68 F.R.D. 361, 366-69 (D. Del. 1975), we have not yet decided whether or to what extent the exception applies in the Third Circuit. *See Depenbrock v. CIGNA Corp.*, 389 F.3d 78, 81 (3d Cir. 2004).

We recognize that in a number of circuits it is well-settled that the fiduciary exception can apply to ERISA fiduciaries. *See*, *e.g.*, *LILCO*, 129 F.3d at 272; *Wildbur*, 974 F.2d at 645; *Bland*, 401 F.3d at 787-88; *Mett*, 178 F.3d at 1062. Moreover, HN-NJ concedes that it is a fiduciary under ERISA because it has authority to process individual beneficiaries' insurance claims. Under ERISA, an entity is considered a fiduciary to the extent that, *inter alia*, it holds any discretionary authority or discretionary responsibility in the administration of an employee benefit plan. 29 U.S.C. § 1002(21)(A)(iii).[2]

---

[2]29 U.S.C. § 1002(21)(A) provides in full:

Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary

11

Interpreting this provision, the Supreme Court has held that an insurance company with discretionary responsibility over the award of benefits under an employee benefit plan acts as a fiduciary under ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004) ("[T]he ultimate decisionmaker in a plan regarding an award of benefits must be a fiduciary and must be acting as a fiduciary when determining a participant's or beneficiary's claim."). Accordingly, at least to the extent that HN-NJ has discretion to determine claims covered by its policies, it is an ERISA fiduciary. Health Net characterizes a subsidiary as a "claims fiduciary" under 29 U.S.C. § 1133 if the subsidiary exercises discretion in making claims decisions under insured plans. Health Net maintains, however, that no Health Net entity is a fiduciary for any other purpose. We need not examine the particulars of the fiduciary obligations of the

---

authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title [providing for the designation of other fiduciaries in the plan instrument].

Health Net companies, except to note that HN-NJ is not a plan administrator or trustee and that its fiduciary status arises out of its discretionary authority over the payment of benefits owed to plan beneficiaries.

Health Net contends that the fiduciary exception recognized at common law does not apply to every entity which is designated a fiduciary under ERISA. Instead, it argues that a fiduciary such as HN-NJ – an insurance company which contracts with multiple employee benefit plans to provide health insurance to employee-beneficiaries, processes and pays claims using its own assets, obtains legal advice using its own funds, and operates with an eye toward profits – falls outside the scope of the fiduciary exception. To our knowledge, no court has considered whether the fiduciary exception to the federal attorney client privilege applies with equal force to all fiduciaries under ERISA. It is that question which we now confront.

### A. History and Development of the Fiduciary Exception

We will begin our consideration with an historical review of the attorney-client privilege and the development of the fiduciary exception. In sixteenth-century England, the right to testimonial compulsion was still in its infancy. Along with the emergence of this right to compel testimony there also arose an exception – the attorney-client privilege. 8 J. WIGMORE, EVIDENCE § 2290 (McNaughton rev. 1961). Jurists originally justified the privilege as necessary to protect an attorney's "point of honor" to refrain from divulging the secrets of his

13

clients. However, by the late 1700s, a new policy underlying the privilege took hold. Jurists reasoned that "to promote the freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisors must be removed . . .." *Id.* at § 2291. This policy has survived as the modern justification for the privilege. *Id.* at §§ 2290-91.

As we cross centuries to reach the Federal Rules of Evidence, we find that the common law development of the attorney-client privilege continues in the federal courts of the United States. Under FEDERAL RULE OF EVIDENCE 501, evidentiary privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Rule 501 requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication. *See Upjohn Co. v. United States*, 449 U.S. 387, 396 (1981). Consistent with this analytical dictate, federal courts have long recognized the applicability of the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law," *id.* at 389, and it is well established that "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The policy behind the privilege is equally well established: Full and frank communication between attorneys and their clients must be encouraged because the administration of justice in a complex society depends upon the availability of sound legal advice, and in turn, the soundness of legal advice depends upon clients' willingness to present full disclosures to their attorneys. *See*

14

*Upjohn*, 449 U.S. at 389.

For centuries, the common law has also recognized "as a fundamental maxim that the public . . . has a right to every man's evidence" and "that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." 8 WIGMORE at § 2192. Because the attorney-client privilege has this effect of withholding relevant information from fact-finders, federal courts must apply it only where necessary to achieve its purpose. *Fisher*, 425 U.S. at 403. As a result, the well-established limitations which have been developed under the common law all are consistent with the purpose of encouraging clients to speak fully with their lawyers without concern that what they say to the lawyer will be disclosed. *See Swidler & Berlin v. United States*, 524 U.S. 399, 409-10 (1998). Where this purpose ends, so too does the protection of the privilege.

For example, because the purpose of the privilege is to promote the dissemination of sound legal advice, the privilege will extend only to advice which is legal in nature. Where a lawyer provides non-legal business advice, the communication is not privileged. 8 WIGMORE at § 2303; *In re Lindsey*, 158 F.3d at 1270. Similarly, the protections of the privilege are restricted to those communications which are made in confidence, since a client who speaks openly or in the presence of a third party needs no promise of confidentiality to induce disclosure. 8 WIGMORE at § 2311; *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991). As for two clients having a common legal interest who are represented by the same attorney, the confidentiality requirement means that,

although communications between a client and the attorney may be privileged as to outsiders, they are not privileged *inter sese*. 8 WIGMORE at § 2312; *Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974* 406 F. Supp. 381, 387 (S.D.N.Y. 1975). On the other hand, the administration of justice is not improved by protecting communications designed to further a crime or a fraud; such communications consequently fall outside the scope of the attorney-client privilege. *United States v. Zolin*, 491 U.S. 554, 562-563 (1989). To these exceptions, many courts have added another – the fiduciary exception. The fiduciary exception first emerged in nineteenth-century England as a principle of trust law. Under English common law, when a trustee obtained legal advice relating to his administration of the trust, and not in anticipation of adversarial legal proceedings against him, the beneficiaries of the trust had the right to the production of that advice. *See Talbot v. Marshfield*, 2 Drew & Sm. 549, 62 Eng. Rep. 728 (Ch. 1865). *See also Wynne v. Humbertson*, 27 Beav. 421, 54 Eng. Rep. 165 (1858). The theory of the rule was that the trustee obtained the advice using both the authority and the funds of the trust, and that the benefit of advice regarding the administration of the trust ran to the beneficiaries. *Talbot*, 2 Drew & Sm. at 550-51, 62 Eng. Rep. at 729. The rule recognized in *Talbot* and *Wynne* quickly became well-established at English common law. *See*, *e.g.*, *In re Mason*, 22 Ch. D. 609 (1883).

It was not, however, until the 1970s that the fiduciary exception found its way into American case law. American courts adopted the exception in two separate contexts – trusts and shareholder suits. The application to trusts was the more straight-forward of the two, as it involved a direct application of

16

the principles enunciated in *Talbot* and *Wynne*. In *Riggs Nat'l Bank of Wash., D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976), the Delaware Court of Chancery held that the beneficiaries of a trust were entitled to discover a legal memorandum which had been prepared for their trustees in connection with matters of trust administration, and for which the trustees had paid using trust assets. Noting that "American case law is practically nonexistent on the duty of a trustee in this context," the court looked back to *Talbot*, *Wynne*, and *Mason* and found a clear and applicable rule of trusts. *Id.* at 712-13. In applying this rule, the court found the memorandum to be discoverable for two reasons. First, the court placed a great deal of weight on the duty of a trustee to furnish information to the trust beneficiaries. *Id.* at 712, 714. Second, the court found the memorandum discoverable for the equally compelling reason that it determined that counsel's "real" clients – in whom, under long-standing principle, the attorney-client privilege vested – were the beneficiaries, not the trustees (whom the court described as mere representatives). *Id.* at 712-13. Identification of the "real" client was informed by several factors: (1) the content of the advice was for the benefit of the trust, not the trustees; (2) the advice was paid for with assets of the trust, not the trustees; and (3) no adversarial proceeding against the trustees was pending, meaning that the trustees had no need to seek personal legal advice. *Id.* at 711. Indeed, the court noted that a trustee who properly executes his duties acts *only* on behalf of the beneficiaries. *Id.* In this sense, the fiduciary exception is something of a misnomer because it is the beneficiary, rather than the trustee, who is the "client" component of the "attorney-client" privilege.

17

Although the discussion in *Riggs* is focused on principles of trust law, American application of the fiduciary exception has not been limited to the trust context. Even before *Riggs* was decided, the Fifth Circuit held in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), that in a shareholder action, legal advice given to corporate managers by corporate counsel for the benefit of the corporation was not privileged. The court recognized that corporate managers, and even sometimes the corporate entity, may have interests adverse to some or all of the shareholders, particularly because shareholders' varying ownership interests mean that shareholders' interests often are not uniform. *Id.* at 1101. The court concluded that "when all is said and done the management is not managing for itself." *Id.* Central to this conclusion was the fundamental fact that corporate managers in the ordinary course can have no legitimate personal interests for which the advice of corporate counsel (paid for from corporate funds) is needed. When a legitimate personal interest does emerge – such as when a corporate manager is sued by shareholders – the manager then becomes entitled to legal advice which is not discoverable by the shareholders. Thus, of central importance in both *Garner* and *Riggs* was the fiduciary's lack of a legitimate personal interest in the legal advice obtained. *Id.*; 355 A.2d at 712.

## B. Scope of the Fiduciary Exception under ERISA

In the early 1980s, federal courts began extending the principles of *Garner* and *Riggs* to apply against ERISA fiduciaries. First, in 1981, the fiduciary exception was used to render discoverable attorney-client communications by pension fund officials regarding the administration of the fund.

18

*Donovan v. Fitzsimmons*, 90 F.R.D. 583, 585 (N.D. Ill. 1981). The court relied on both *Garner* and *Riggs* to hold that, where beneficiaries sue their fiduciaries alleging breaches of fiduciary duty, the attorney-client privilege does not attach to legal advice rendered to the fiduciaries for assistance in the performance of fiduciary duties. *Id.* at 585-86. Most notably, the court recognized that the *Garner* rule might not apply in every fiduciary situation but found it applicable to the ERISA fiduciaries before it because of the strong parallels to the trustee situation in *Riggs*. *Id.* at 586.

It is not surprising that the court found the analogy between trust law and ERISA to be apt; the Supreme Court has recognized that fiduciary duties under ERISA "draw much of their content from the common law of trusts, the law that governed most benefit plans before ERISA's enactment." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996).

The following year, another federal district court applied the fiduciary exception in an ERISA action. *See Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Star Co.*, 543 F. Supp. 906 (D.D.C. 1982). For our purposes, the case is most significant for the broad, sweeping language with which the court asserted that "[w]hen an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries." *Id.* at 909. On its face, this language suggests that the court's holding applies to any ERISA fiduciary acting in its fiduciary capacity, regardless of whether the fiduciary is a plan administrator, trustee, or a limited-purpose statutory fiduciary. Such a reading

19

would be unjustified. The court's analysis focused on the responsibilities of trustees; the defendants in that case were the trustees and the sponsor of an ERISA-regulated plan. The court simply did not consider whether the fiduciary exception applied with equal force to all ERISA fiduciaries, its broad language notwithstanding.

Since *Donovan* and *Washington Star* were decided, many other courts have applied the fiduciary exception to ERISA fiduciaries. Just as the *Riggs* court recognized that the exception was premised on both the beneficiaries' right to inspection and their identity as the "real" clients, courts applying the fiduciary exception to ERISA fiduciaries have cited these same rationales. *See Mett*, 178 F.3d at 1063. These courts also have recognized two types of situations in which the fiduciary exception does not apply. First, under the "liability exception," a fiduciary, seeking the advice of counsel for its own personal defense in contemplation of adversarial proceedings against its beneficiaries, retains the attorney-client privilege. *Mett*, 178 F.3d at 1063-64; *Riggs*, 355 A.2d at 711. Second, under the "settlor exception," courts distinguish between fiduciary acts and settlor acts, the former being discretionary acts of plan administration and the latter involving the adoption, modification, or termination of an employee benefit plan. *See* 29 U.S.C. § 1002(21)(A)(iii); *Aetna*, 542 U.S. at 220*; Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996). The fiduciary exception does not apply to settlor acts because such acts are more akin to those of a non-fiduciary trust settlor than they are to those of a trustee. *See Lockheed*, 517 U.S. at 891; *Bland*, 401 F.3d at 787-88.

20

These two exceptions to the fiduciary exceptions share a common justification – both allow the attorney-client privilege to remain intact for an ERISA fiduciary when its interests diverge sufficiently from those of the beneficiaries that the justifications for the fiduciary exception no longer outweigh the policy underlying the attorney-client privilege. The beneficiaries are no longer the real clients, and disclosure of attorney-client communications is no longer an obligation.

ERISA fiduciaries, however, come in many shapes and sizes, and we do not believe that the logic underlying the fiduciary exception applies equally to all. We conclude that the fiduciary exception does not apply to an insurer like HN-NJ and its corporate parents because the plaintiff-beneficiaries are not the "real" clients obtaining legal representation.

In some respects, an insurer providing benefits to the beneficiaries of an ERISA-regulated plan is no differently situated than a plan administrator or an ERISA trustee. All are considered to be fiduciaries under ERISA, and all owe duties of loyalty and care to their beneficiaries. Because they are fiduciaries, they must act in furtherance of their beneficiaries' interests. Nonetheless, significant differences exist between insurance company fiduciaries such as HN-NJ and other ERISA fiduciaries to whom the fiduciary exception has been applied.

### 1. Identity of the Client

The first significant difference is the identity of the entity for whom the legal advice is given. When a contractual service provider such as HN-NJ obtains legal advice regarding the

execution of its fiduciary obligations, the beneficiaries of the customer benefit plans are not the "real" clients. We look to four factors in reaching this conclusion. The first is the ownership of the assets. In situations in which the fiduciary exception traditionally has been applied, the fiduciary is managing assets over which it lacks ownership rights. For instance, a trustee, by definition, manages a trust *res* it does not own; because the trust separates ownership from management, the trustee can have no legitimate personal interest in the trust's funds or its management. *See Riggs*, 355 A.2d at 711. Similarly, a corporate manager manages assets owned by the shareholders of the corporation.[3] In contrast, although ERISA typically requires that plan assets be held in trust, 29 U.S.C. § 1103(a), this requirement is excepted for insurance companies providing insurance contracts. 29 U.S.C. § 1103(b)(1)-(2). Although HN-NJ's disposition of its assets may be limited by its contractual and statutory obligations, legal title to the assets nonetheless remains with HN-NJ. This convergence of management and ownership places an insurer like HN-NJ in a different position than other ERISA fiduciaries to whom the fiduciary exception has been applied, and demonstrates that HN-NJ has a substantial and legitimate interest in the management of its assets – even while it engages in fiduciary acts.

Second, our Court has recognized that when an insurance

---

[3]A corporate manager may be a shareholder of the same corporation whose assets it manages. That such a manager may wear two hats does not change the fact that the hats it wears are legally distinct.

22

company, pursuant to a contract with an employer or benefit plan, determines eligibility for benefits and pays those benefits from its own funds, a structural conflict of interests arises. In this situation, "the fund from which monies are paid is the same fund from which the insurance company reaps its profits. This is in contrast to the actuarially determined benefit funds typically maintained by employers (especially in the pension area) that usually cannot be recouped by the employer or directly redound to its benefit." *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378-79 (3d Cir. 2000). Because of the conflict inherent in an insurer's profit motive, we have held that when an insurer exercises discretionary authority over benefits, we will review its discretionary acts under a different, heightened standard of review than we will use to review the acts of other ERISA fiduciaries. *See id.* at 379. Although a structural conflict of interests increases the need for judicial scrutiny, it also undermines the argument that when an insurer retains counsel, the real clients being served are the beneficiaries. In *Pinto*, we adopted a sliding scale approach to reviewing fiduciaries' discretionary acts, under which we increase our scrutiny as the fiduciary's conflicts increase. *Id.* at 392. Inversely, as a fiduciary's conflicts with its beneficiaries increase, the beneficiaries' ability to claim that they are the real clients of counsel retained by the fiduciary must diminish. Although the presence of a conflict of interest, without more, may not be enough to render the fiduciary exception inapplicable, it is a factor that weighs in favor of retaining the

23

evidentiary privilege.[4]

Third, many insurers (including HN-NJ) face the additional conflict of handling multiple ERISA benefit plans at once, not to mention other, non-ERISA regulated customers. This situation is far different from that of a corporation whose shareholders have different interests because they hold different amounts or classes of stock. *Cf. Garner*, 430 F.2d at 1101. In the *Garner* situation, at least the corporate managers know that they owe their fiduciary obligations to a single, discrete group – the shareholders of the corporation. Similarly, although the trustee of a benefit plan must take care to ensure that all the plan's beneficiaries receive the benefits which they are owed,

[4]Health Net argues for a "mutuality of interests" requirement that would preclude application of the fiduciary exception where the interests of the fiduciary and the beneficiaries diverge. *Complete* mutuality is not a requirement for the fiduciary exception to apply. As early as *Garner*, courts have recognized that the relevant shareholders or beneficiaries may have interests so divergent that the fiduciary cannot possibly align itself with every interest at once. 430 F.2d at 1101. Nonetheless, the *Garner* court allowed the fiduciary exception to apply in such a situation. We believe that conflicts of interests must be judged using a sliding scale on a case-by-case basis. This approach is consistent both with our approach to conflicts of interests in other contexts, *see Pinto*, 214 F.3d at 392, and with our obligation to evaluate evidentiary privileges using the common law method. *See* FEDERAL RULE OF EVIDENCE 501; *Upjohn*, 449 U.S. at 396-97.

24

management of the overall trust is meant to be a conflict-free endeavor. An insurer such as HN-NJ, however, owes distinct duties to each of its customers, including various benefit plans and other entities. Even while acting as a loyal fiduciary to the beneficiaries of one plan, HN-NJ must be mindful of the duties it owes to the beneficiaries of other customer plans, all of whom are paid from the same pool of assets. Again, we see that HN-NJ and the Health Net companies have interests larger and distinct from those of its beneficiaries.

Finally, we note that HN-NJ and its parent companies paid for legal advice using their own assets, not those of their beneficiaries. Courts have noted that when a trustee pays counsel out of trust funds, rather than out of its own pocket, the payment scheme is strongly indicative of the beneficiaries' status as the true clients. *E.g.*, *Riggs*, 355 A.2d at 712 ("[T]he payment to the law firm out of the trust assets is a significant factor, not only in weighing ultimately whether the beneficiaries ought to have access to the document, but also it is in itself a strong indication of precisely who the real clients were."). Conversely, when a fiduciary obtains legal advice using its own funds, the payment scheme is an indicator (albeit only an indicator) that the fiduciary is the client, not a representative.

Together, these four factors – unity of ownership and management, conflicting interests regarding profits, conflicting fiduciary obligations, and payment of counsel with the fiduciary's own funds – indicate that an insurer which sells insurance contracts to ERISA-regulated benefit plans is itself the sole and direct client of counsel retained by the insurer, not the mere representative of client-beneficiaries, and not a joint client

25

with its beneficiaries. Were the insurer's counsel to also represent the beneficiaries who seek to maximize their benefit payments, that counsel would face a direct conflict of interest under any standard of legal ethics. It would be odd indeed if ERISA were to force lawyers into precisely this conflicted role.

## 2. Duty of Disclosure

Even though we conclude that HN-NJ and its corporate parents are the sole and direct clients of their retained counsel, we must also consider a second rationale for applying the fiduciary exception – the fiduciary's duty of disclosure. The obligation of a trustee to disclose to beneficiaries the advice of counsel retained by the trust has been recognized in each of three Restatements of Trusts. *See* RESTATEMENT (FIRST) OF TRUSTS § 173 (1935); RESTATEMENT (SECOND) OF TRUSTS § 173 (1959); RESTATEMENT (THIRD) OF TRUSTS § 82 cmt. f (Tentative Draft No. 4, 2005). Some courts have used language broad enough to suggest that *every* ERISA fiduciary has an obligation to disclose counsel's statements to its beneficiaries. *E.g.*, *LILCO*, 129 F.3d at 271-72 ("An *ERISA fiduciary* has an obligation to provide full and accurate information to the plan beneficiaries regarding the *administration of the plan*." (empasis added)); *Washington Star*, 543 F. Supp. at 909.

We conclude that such broad language does not represent an intentional expansion of the fiduciary exception. Because fiduciary duties under ERISA "draw much of their content from the common law of trusts," *Varity*, 516 U.S. at 496, it is appropriate to apply a trustee's disclosure obligations to ERISA plan administrators who operate as trustees. When Congress

26

extended obligations under the common law of trusts to reach entities which had not been deemed to be trustees under the common law, however, Congress did not intend to expand the full panoply of trustees' obligations to every entity which might be designated a fiduciary under ERISA. Specifically, Congress provided that the assets of an insurance company need not be held in trust. 29 U.S.C. § 1103(b)(1)-(2). For that reason, we do not believe that Congress intended to impose upon insurance companies doing business with ERISA-regulated plans the same disclosure obligations that have been imposed upon trustees at common law. Section 1103(b)(1)-(2) excepts insurers from trustee-like obligations; we see no reason to impose trustee-like disclosure obligations upon an entity excepted from ERISA's analogy to trust. Thus, simply because an insurer has certain limited fiduciary obligations under ERISA, those obligations are not coextensive with the common law obligations of a trustee.

We do not suggest that an insurer servicing an ERISA plan owes no disclosure obligations to plan beneficiaries. Indeed, under 29 U.S.C. § 1133(a), an insurer-fiduciary denying a claim for benefits must disclose the specific reasons for the denial. But we do conclude that the disclosure obligations of an insurer-fiduciary cannot be defined through rote application of the common law of trusts.

Two additional factors convince us that Health Net's disclosure obligations do not require it to reveal the advice it obtains from its own retained counsel. First, the fiduciary obligations of insurers who contract with ERISA plans are not well-settled at law. Definition of those obligations often will be one of the most hotly contested issues in a lawsuit. It would be

27

imprudent to craft an evidentiary privilege in such a way as to require the difficult task of defining fiduciary obligations to be met at the discovery stage. Moreover, when dealing with the attorney-client privilege, courts must be particularly careful not to craft rules that cause application of the privilege to turn on the answers to extremely difficult substantive legal questions. "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393. We are reluctant to ask lawyers to read tea leaves and predict how courts will resolve the imponderables of ERISA before they can take the most preliminary step of advising their clients as to whether their communications will remain confidential.

We note a certain paradox inherent in any application of the fiduciary exception to an insurer which is acting as a fiduciary in deciding claims under an ERISA plan. The need for the attorney-client privilege is at its height where the law with which the client seeks to comply is complicated and the penalties for noncompliance are great. *Cf. id.* at 392 (noting that corporations have a strong need for confidential legal advice because of the complicated legal rules confronting them). ERISA is an enormously complicated statute. An entity's ability to secure confidential legal advice should not be at its lowest when complex legal obligations are at their highest. Although this problem arises whenever the fiduciary exception applies to an ERISA fiduciary, its undesirability should counsel against overzealous extension of the exception.

Second, an expansive and uncertain attorney-client privilege for insurer-fiduciaries will cause insurers to reevaluate

28

their relationships with ERISA plans. Some may choose to cease providing insurance for benefit plans altogether. Others may increase their charges for ERISA-regulated customers to reflect the added risk that they may lose their ability to obtain confidential legal advice. Perhaps others will simply decline to fully inform their attorneys of all relevant facts. None of these outcomes is desirable for ERISA beneficiaries. These concerns, of course, are merely variations of ones that have been rejected by courts regarding the fiduciary exception as applied to trustees, corporate managers, and ERISA plan administrators. They are, however, thumbs on the scale and help to tip the balance.

We remind the parties that, although the fiduciary exception is not applicable here, not every communication between Health Net and its attorneys is necessarily privileged. Other limitations and exceptions to the attorney-client privilege still apply. For instance, the communications must be for legal, not business purposes. Moreover, even when attorney-client communications are privileged, the privilege runs only to the communications themselves, not the underlying information communicated. *Upjohn*, 449 U.S. at 395. Thus, our holding today forecloses only a means of discovering information; alternate paths of discovery are not closed.

## IV. <u>Conclusion</u>

The District Court erred in applying the fiduciary exception to the Health Net defendants and consequently erred in ordering the production of privileged documents. We will therefore vacate the District Court's order of May 12, 2006,

29

insofar as it requires the production of documents contained in Privilege Logs 1-11 that the Special Master determined would be privileged as attorney-client communications in the absence of any applicable fiduciary exception, and we will remand this case to the District Court for further proceedings.