Christopher SMITH, Plaintiff,

v.

**JEFFERSON PILOT FINANCIAL INSURANCE COMPANY,**
Defendant.

No. CIV A 07–10228–PBS.

United States District Court,
D. Massachusetts.

Aug. 2, 2007.

**46**

J. Scott Kilpatrick, Chisholm Chisholm & Kilpatrick LLP, Providence, RI, Jonathan M. Feigenbaum, Phillips & Angley, Boston, MA, for Plaintiff.

Edward S. Rooney, Jr., Eckert Seamans Cherin & Mellott, LLC, Boston, MA, for Defendant.

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Christopher Smith ("Smith"), has brought this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), claiming that the defendant, Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"), is obligated to pay him increased benefits under a group long-term disability insurance policy that Jefferson Pilot issued to Smith's employer. The matter is presently before the court on the "Plaintiff's Motion to Compel Disclosure of Documents Withheld by Defendant Under Claim of Attorney Client Communication Privilege or Attorney Work Product" (Docket No. 12). By his motion, Smith is seeking an order compelling Jefferson Pilot to disclose 13 documents that the defendant

has withheld from production based on the attorney-client privilege.[1] Smith claims that even if the documents consist of privileged communications, he is entitled to them under the so-called "fiduciary exception" to the attorney-client privilege.

Smith's motion raises an issue of first impression in this Circuit, as the First Circuit Court of Appeals has not addressed the application of the fiduciary exception in the ERISA context. Although Jefferson Pilot does not dispute that the fiduciary exception may be applied to some ERISA fiduciaries, it contends that it should not apply to insurance companies, and it urges this court to adopt the reasoning of *Wachtel v. Health Net, Inc.,* 482 F.3d 225 (3d Cir.2007), in which the Third Circuit Court of Appeals held that the fiduciary exception does not apply when the fiduciary at issue is an insurer acting as a claim administrator rather than a trustee or plan administrator.

After consideration of the parties' submissions, oral arguments and an *in camera* review of the disputed documents, this court finds that the disputed documents, while generally privileged, are discoverable under the fiduciary exception to the attorney-client privilege with one exception. This court declines to follow *Wachtel* under the circumstances of this case, and concludes that the fiduciary exception applies. Accordingly the motion to compel is ALLOWED, except for the first section of handwritten notes on document No. 12 which reflect settlement considerations and may be redacted.

### II. STATEMENT OF FACTS

Smith filed a claim with Jefferson Pilot under his employer's "Group Long Term Disability Insurance Policy" on the grounds that he was totally disabled. After initially denying his short-term disability claim, Jefferson Pilot subsequently determined that Smith was entitled to both short term and long term benefits under the policy, and has been making such payments. However,

---

1. The defendant initially had opposed the disclosure of the disputed documents on the grounds of both the attorney-client privilege and the work product doctrine. However, at oral argument the defendant agreed that it is claiming only attorney-client privilege, so that will be the only privilege addressed.

Smith disputes the calculation of his monthly benefits under the insurance policy.

Smith hired an attorney to represent him in connection with discussions with Jefferson Pilot's claims personnel concerning the appropriate level of compensation. These claims personnel consulted with Jefferson Pilot's in-house counsel in preparing responses to Smith's counsel. The documents being withheld, for the most part, reflect these internal communications.

Jefferson Pilot describes its role in this case as a "claims administrator." (*See* Def.'s Opp. (Docket No. 17) at 2). Thus, under ERISA, a covered plan providing for disability benefits may be established or maintained by an employer "through the purchase of insurance or otherwise[.]" 29 U.S.C. § 1002(1). Jefferson Pilot is a fiduciary by virtue of the fact that it exercises authority or discretionary authority over the payment of benefits owed to plan beneficiaries. *See* 29 U.S.C. § 1002(21)(A)(iii) (defining a fiduciary under a plan to include anyone who "has any discretionary authority or discretionary responsibility in the administration of such plan").

Additional facts will be provided below where appropriate.

## III. *ANALYSIS*

### A. *The Attorney Client Privilege*

■ Jefferson Pilot claims that the 13 documents at issue are protected by the attorney-client privilege. Therefore, this court must determine, as a threshold matter, whether the defendant was justified in withholding the documents as privileged in the first instance. "The attorney-client privilege ... protects communications made between an attorney and a client for the sake of obtaining legal advice" and "extends to communications made to a representative of the attorney for the sake of obtaining the attorney's advice." *City of Worcester v. HCA Mgmt. Co., Inc.*, 839 F.Supp. 86, 88 (D.Mass. 1993). Jefferson Pilot, "as the party asserting the privilege, has the burden of proving

that the privilege attaches to the communications at issue." *Id.*

■ After an *in camera* review, this court finds that the disputed documents are privileged.[2] For the most part, the documents reflect confidential communications between claims personnel at Jefferson Pilot and attorneys and their representatives in the defendant's in-house legal department. They further establish that the communications generally were made for the purpose of seeking and providing legal advice in connection with Jefferson Pilot's responses to plaintiff's counsel's requests for information and assertions regarding the plaintiff's right to benefits under the applicable insurance policy. Thus, Jefferson Pilot has demonstrated a basis for withholding the documents under a claim of privilege.

### B. *The Fiduciary Exception*

■ Smith argues that even if the attorney-client privilege attaches, the plaintiff is entitled to obtain the documents under the fiduciary exception. This exception to the attorney-client privilege is rooted in English trust law, but has since been applied to numerous fiduciary relationships, including those existing in the ERISA context. *See United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir.1999). "As applied in the ERISA context, the fiduciary exception provides that an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *Id.* (quoting *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir.1997)). The First Circuit has not addressed whether a fiduciary exception to the attorney-client privilege is applicable to non-employer ERISA fiduciaries, such as insurance companies. After reviewing the case law from other jurisdictions in light of the underlying policies of ERISA to protect participants in employee benefit plans and facilitate disclosure of information concerning plan administration, this court finds that the fiduciary exception applies in the instant case.

---

2. Portions of some of the documents may not be privileged as they reflect business information instead of legal advice. Such parsing of each

document is not necessary, however, in light of this court's ruling on the issue of the fiduciary exception.

"The fiduciary exception is rooted in two distinct rationales. First, some courts have held that the exception derives from an ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration." *Id.* (citation omitted). These courts reason that "[a]n ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan[,]" including "any communications with an attorney that are intended to assist in the administration of the plan." *Long Island Lighting,* 129 F.3d at 271–72. Consequently, the "fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries." *Id.* at 272. *See also Bland v. Fiatallis N. Am., Inc.,* 401 F.3d 779, 787 (7th Cir.2005) (fiduciary exception "is premised on the theory that the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty"). "Other courts have focused instead on the role of the trustee and have endorsed the notion that, 'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" *Mett,* 178 F.3d at 1063 (quoting *United States v. Evans,* 796 F.2d 264, 266 (9th Cir.1986)). Under this line of reasoning, "[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 645 (5th Cir.1992). *Accord Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.,* 543 F.Supp. 906, 909 (D.D.C.1982). Thus, "[t]he very intention of the communication is to aid the beneficiaries" and the fiduciary "cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege." *Washington Star,* 543 F.Supp. at 909.

■ Under either rationale, however, the courts have determined that the fiduciary exception does not defeat the attorney-client privilege with respect to communications between a fiduciary and its attorneys on non-

fiduciary matters. *See e.g., Long Island Lighting,* 129 F.3d at 271 (defendant's "ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the [defendant] owed a fiduciary obligation to the beneficiaries"). "In particular, courts have found that, '[w]hen an ERISA trustee seeks legal advice for his own protection, the legal fiction of trustee as representative of the beneficiaries is dispelled' and therefore the fiduciary exception is not applicable." *Asuncion v. Metro. Life Ins. Co.,* 493 F.Supp.2d 716, 720–21 (S.D.N.Y.2007) (quoting *Black v. Bowes,* No. 05 Civ. 108(GEL), 2006 WL 3771097, at *1 (S.D.N.Y. Dec.21, 2006)) (additional quotations and citation omitted). Therefore, "where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact." *Mett,* 178 F.3d at 1064. *See also Wildbur,* 974 F.2d at 645 (communications between attorney and plan administrator for purpose of defending lawsuit and having nothing to do with plan administration not subject to discovery).

In order to determine whether a particular attorney-client communication concerns a matter of plan administration or seeks legal advice for the fiduciary's own benefit, "courts engage in a fact-specific inquiry, examining both the content and context of the specific communication. Frequently, the key question is whether the communication was made before or after the final decision to deny benefits." *Asuncion,* 493 F.Supp.2d at 720–21 (quotations and citations omitted). That is because after the challenged benefits determination occurs, "there should be little need for administrators to consult counsel regarding a specific benefits determination." *Id.* (quoting *Black,* 2006 WL 3771097, at *3).

In the instant case, Jefferson Pilot does not dispute, and this court's *in camera* review has confirmed, that, with one exception, the documents at issue were generated in connection with Jefferson Pilot's processing of Smith's claim for benefits and before a

final benefits determination was made.[3] (*See* Def.'s Mem. (Docket No. 17) at 4–5). Although they demonstrate that claims personnel were seeking advice for the purpose of responding to inquiries and assertions from Smith's attorney, the documents concern issues of plan administration and are entirely unrelated to the defense of a pending legal action or other non-fiduciary matter. Therefore, pursuant to the reasoning of the courts discussed above, the fiduciary exception would defeat Jefferson Pilot's claim of privilege.

### C. Analysis of the Wachtel Decision

The defendant argues that this court should follow *Wachtel* and find that the fiduciary exception does not apply to insurers like Jefferson Pilot. This court finds that the rationale underlying the court's decision in *Wachtel* is not persuasive given the status of the law in the First Circuit. Accordingly, as described in the next section, this court declines to adopt the reasoning of the Third Circuit in *Wachtel* and finds that, consistent with the case law described above, the fiduciary exception applies in this case.

Until recently, courts considering the fiduciary exception in the ERISA context have applied the exception broadly, without regard to the type of fiduciary at issue. *See e.g., Wildbur*, 974 F.2d at 645 ("When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator. Therefore, an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration.") (citation omitted); *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 619 (D.Kan.2001) ("courts generally have held that although the attorney-client privilege does not apply when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney-client privilege does apply when an attorney advises a plan fiduciary regarding issues that do not involve

actual administration of the plan."). However, in *Wachtel*, the Third Circuit noted that ERISA fiduciaries "come in many shapes and sizes" and it specifically rejected the notion that "the logic underlying the fiduciary exception applies equally to all." *Wachtel*, 482 F.3d at 234. Although the court recognized that insurer fiduciaries, like plan administrators or ERISA trustees, "owe duties of loyalty and care to their beneficiaries" and "must act in furtherance of their beneficiaries' interests[,]" it determined that "significant differences exist between insurance company fiduciaries . . . and other ERISA fiduciaries to whom the fiduciary exception has been applied." *Id.* Consequently, the *Wachtel* court rejected the application of the fiduciary exemption under both theories generally recognized by the courts—(1) that the real clients obtaining legal advice were really the plan beneficiaries, and (2) that there was a broad duty to disclose imposed on plan fiduciaries by ERISA.

### 1. Identity of the Real Client

The *Wachtel* court concluded that insurers were significantly different than other ERISA fiduciaries "because the plaintiff-beneficiaries are not the 'real' clients obtaining legal representation" in the case of an insurance company. *Id.* This holding is premised on the concept that the interests of the insurer and those of the plan beneficiaries are sufficiently divergent to justify withholding attorney-client communications between the insurer and its counsel, even though the communications may have been made while the insurer was acting in its capacity as a fiduciary and concern matters of plan administration. The court looked to four factors in reaching this conclusion. As detailed in the next section, this court does not find these arguments persuasive.

The *Wachtel* court first explained that, unlike other fiduciaries which are required to hold plan assets in trust under ERISA, insurance companies maintain legal title to the assets. *Id.* Consequently, although the insurer's fiduciary obligations may place limits

---

**3.** The first section of handwritten notes on document no. 12 reflect internal settlement consider-ations and may be redacted.

on the disposition of those assets, the insurer maintains "a substantial and legitimate interest in the management of its assets—even while it engages in fiduciary acts." *Id.* Second, the court considered the "structural conflict of interests" that arises when an insurance company "determines eligibility for benefits and pays those benefits from its own funds[.]" *Id.* It noted that because of this conflict, the Third Circuit applies a "heightened standard of review" to benefit claims decisions made by an insurer than it uses to review the acts of other ERISA fiduciaries. *Id.* at 235. The court also determined that such a structural conflict "undermines the argument that when an insurer retains counsel, the real clients being served are the beneficiaries." *Id.*

The third factor that the *Wachtel* court identified to support its conclusion that the plan beneficiaries were not the true client was "the additional conflict of handling multiple ERISA benefit plans at once, not to mention other, non-ERISA regulated customers." *Id.* The court emphasized that an insurer, "[e]ven while acting as a loyal fiduciary to the beneficiaries of one plan, ... must be mindful of the duties it owes to the beneficiaries of other customer plans, all of whom are paid from the same pool of assets." *Id.* Again it found that insurers "have interests larger and distinct from those of its beneficiaries." *Id.* Finally, the court noted that the defendant insurers had paid for legal advice out of their own assets rather than the assets of their beneficiaries, and it found this payment scheme to be "an indicator (albeit only an indicator) that the fiduciary is the client, not a representative." *Id.* at 236. Based on these four factors, the court concluded that "an insurer which sells insurance contracts to ERISA-regulated benefit plans is itself the sole and direct client of counsel retained by the insurer, not the mere representative of client-beneficiaries, and not a joint client with its beneficiaries." *Id.*

---

4. 29 U.S.C. § 1103(a) provides in relevant part that "[e]xcept as provided in subsection (b) of this section, all assets of an employee benefit plan shall be held in trust by one or more trustees." Subsection (b) provides in relevant part that "[t]he requirements of subsection (a) of this section shall not apply—(1) to any assets of a

### 2. *Duty to Disclose*

The *Wachtel* court then addressed the "second rationale for applying the fiduciary exception—the fiduciary's duty of disclosure." *Id.* The court noted that successive versions of the Restatement of Trusts had recognized "the obligation of a trustee to disclose to beneficiaries the advice of counsel retained by the trust" and acknowledged that some courts "have used language broad enough to suggest that *every* ERISA fiduciary has an obligation to disclose counsel's statements to its beneficiaries." *Id.* Nevertheless, it concluded that "such broad language does not represent an intentional expansion of the fiduciary exception" and that ERISA "did not intend to expand the full panoply of trustees' obligations to every entity which might be designated a fiduciary under ERISA." *Id.* The court relied on an ERISA provision that exempts insurance companies from the obligation to hold assets in trust to support its determination that insurance companies are not the same as trustees under ERISA, and, therefore, cannot be said to have the same disclosure obligations that are imposed upon trustees under common law. *See id.* (citing 29 U.S.C. § 1103(b)(1)-(2)).[4] While the court clarified that it was not suggesting "that an insurer servicing an ERISA plan owes no disclosure obligations to plan beneficiaries[,]" it determined that "the disclosure obligations of an insurer-fiduciary cannot be defined through rote application of the common law of trusts." *Id.* at 237. Thus, the *Wachtel* court rejected the application of the fiduciary exception to insurers based on ERISA's broad disclosure requirements.

### 3. *Miscellaneous Factors*

Finally, the court cited two additional factors in support of its decision to allow the insurer to rely on the attorney-client privilege. First, the court held, "the fiduciary

---

plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in a State; (2) to any assets of such an insurance company or any assets of a plan which are held by such an insurance company ...." 29 U.S.C. § 1103(b)(1)-(2).

obligations of insurers who contract with ERISA plans are not well-settled at law" and "[i]t would be impudent to craft an evidentiary privilege in such a way as to require the difficult task of defining fiduciary obligations to be met at the discovery stage." *Id.* Second, the court was concerned that "an expansive and uncertain attorney-client privilege for insurer-fiduciaries will cause insurers to reevaluate their relationships with ERISA plans." *Id.* The court was concerned that this may result in the decision of some insurers to stop providing insurance for benefit plans or raise premiums. *Id.* As the court recognized, however, these arguments have consistently been rejected by courts that have nevertheless applied the fiduciary exception to trustees, corporate managers and plan administrators. *Id.* Nevertheless, the *Wachtel* court concluded that these arguments are "thumbs on the scale and help to tip the balance." *Id.*

### D. *Application of Wachtel to the Instant Case*

#### 1. *Duty to Disclose*

For the reasons detailed herein, this court declines to apply the reasoning of *Wachtel* to the instant case. Addressing the *Wachtel* court's second principal argument first, this court is not persuaded that ERISA's provision exempting insurance companies from holding plan assets in trust signals that Congress intended to exempt insurers from the disclosure obligations established by ERISA. Notably, the *Wachtel* court pointed to nothing in the statute or in its implementing regulations relating to disclosure that would exempt insurance companies from any of ERISA's disclosure requirements or otherwise distinguishes between types of fiduciaries for purposes of disclosure. Thus, this court does not find a statutory basis to apply the fiduciary exemption to all ERISA fiduciaries except insurers.

Moreover, in light of the breadth of the disclosure obligations established by ERISA with respect to plan administration matters, this court agrees with those courts that have determined that the attorney-client privilege should not be used to narrow the scope of those obligations. Section 503 of ERISA provides in relevant part that "[i]n accordance with regulations of the Secretary [of Labor], every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The Department of Labor has promulgated regulations in order to implement the "full and fair review" requirement of ERISA. *See DiGregorio v. Hartford Comprehensive Employee Benefit Serv. Co.*, 423 F.3d 6, 14 (1st Cir.2005). Those regulations, as amended, "require that a plan's claim denial and review procedures must, among other things, '[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information *relevant* to the claimant's claim for benefits.'" *Id.* at 14 n. 4 (quoting 29 C.F.R. § 2560.503–1(h)(2)(iii)) (alteration and emphasis in original). The regulations further define "relevant" information to include those materials "'relied upon in making the benefit determination,' as well as those 'submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination.'" *Id.* (quoting 29 C.F.R. § 2560.503–1(m)(8)) (alteration in original; emphasis omitted). Thus, ERISA places a heavy duty on fiduciaries to provide information concerning plan administration to the beneficiaries.

The opportunity to review materials relevant to a claim determination "is critical to a full and fair review, for by that mechanism the claimant has access to the evidence upon which the decision-maker relied in denying the claim and thus the opportunity to challenge its accuracy and reliability." *Id.* at 14–15 (quoting *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir.1997)). This goal would be frustrated if insurers were able to limit access to such information through a claim of attorney-client privilege.

#### 2. *Identity of Client*

This court is also not persuaded by the *Wachtel* court's contention that the interests of the insurer and those of the plan beneficia-

ries are so divergent as to justify withholding attorney-client communications even though the insurer was acting in its capacity as a fiduciary and the communications concern matters of plan administration. ERISA specifically mandates that fiduciaries discharge their duties with respect to benefits plans "in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan .... " 29 U.S.C. § 1104(a)(1). Under the statute, insurers administering a plan owe the same duty to the beneficiaries as do other ERISA fiduciaries. The fact that an insurance company is a for-profit enterprise does not alter its fundamental obligations under ERISA.

As detailed herein, an analysis of the four factors identified by the *Wachtel* court which led it to conclude that the plan beneficiaries are not the "real clients" when an insurer is the claim administrator does not lead to the same conclusion under First Circuit law.

For example, the first factor identified by the *Wachtel* court in support of its conclusion that the real clients are not the plan beneficiaries is that other ERISA fiduciaries are generally managing assets over which they are serving only as a trustee and lack ownership rights, while an insurer holds legal title to its assets even while engaging in fiduciary acts. However, all fiduciaries have an obligation to properly and appropriately manage the assets which are to be available for the plan beneficiaries. The fact that one set of fiduciaries may be managing assets held in trust, while others are managing their own assets, should not alter the relationship between the fiduciary and the plan beneficiaries.

The Third Circuit found it very significant that there is a "structural conflict of interest" which arises when the insurance company determines eligibility and then pays for the benefits from its own funds. *Wachtel*, 482 F.3d at 234–35. Because of this inherent conflict, the Third Circuit applies a heightened standard of review to claims decisions made by insurers. *Id.* at 235. In contrast to the *Wachtel* court, however, the First Circuit has determined that the structural conflict of

interest that arises when an insurer is asked to award benefits out of its own funds "is not as serious as might appear at first blush." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998). The First Circuit has concluded that any such conflict is reduced by the desire of employers to please their employees and not to keep "an overly tight-fisted insurer." *Id.* Therefore, the significance that the *Wachtel* court placed on the inherent conflict of interest that insurers face when administering an ERISA plan is inconsistent with the law of this Circuit.

The third factor relied on by *Wachtel*, that an insurer may have a conflict arising out of handling multiple ERISA benefit plans or other non-ERISA customers, does not seem to this court to be grounds to distinguish an insurer's fiduciary obligations from those of other ERISA fiduciaries either. Non-insurer fiduciaries have obligations to multiple claimants as well, and must similarly be mindful of the duties owed to others who are to be paid from the same pool of assets. The fact that insurers may handle multiple plans, in addition to the claims of multiple beneficiaries within a single plan, is not grounds for altering the administrator's fiduciary obligations vis-á-vis the beneficiaries.

The *Wachtel* court's final factor, that the insurer bore the cost of legal advice out of its own assets, has no application here. Unlike in *Wachtel*, where the insurer retained counsel, Jefferson Pilot sought advice concerning plan administration from its own in-house counsel. This suggests that Jefferson Pilot's counsel was acting in a fiduciary capacity at the time the advice was rendered. Moreover, there was no additional cost incurred by Jefferson Pilot in obtaining the legal advice: it was no different than the cost that it incurred by having its claims personnel administer the claim in their fiduciary capacity. Therefore, the identity of counsel does not mandate that the insurer's interest are so divergent from that of the plan beneficiaries as to negate the conclusion that the beneficiaries are the intended clients of the attorney-client consultations.

### 3. *Miscellaneous Factors*

Finally, the two miscellaneous factors which tipped the sales in the *Wachtel* court's

opinion have been rejected by the multitude of courts addressing the fiduciary exception. This court also does not find the arguments persuasive. Knowing that the fiduciary exception will apply to an insurer's communications with counsel will give the insurer as much certainty as a holding to the contrary. In addition, there is nothing in the record before this court to indicate that the insurance company will run away from the business of providing coverage under ERISA plans because it must disclose information concerning how it reached benefit decisions.

In conclusion, this court finds that the fiduciary exception recognized by the majority of courts that have analyzed the fiduciary exception in the ERISA context should apply in the instant case. Privileged communications between the insurer and its in-house counsel should be protected to the extent they are not related to fiduciary matters, but must be disclosed where they concern matters of plan administration. This application of the fiduciary exception is most consistent with the disclosure requirements and fiduciary obligations established by ERISA, even where, as here, the fiduciary is an insurer.

## IV. *ORDER*

For all of the reasons detailed herein, the "Plaintiff's Motion to Compel Disclosure of Documents Withheld by Defendant Under Claim of Attorney Client Communication Privilege or Attorney Work Product" is ALLOWED, except for the first section of handwritten notes on document No. 12 which reflect settlement considerations and may be redacted.