**Barbara ALLEN, et al., Plaintiffs,**

v.

**HONEYWELL RETIREMENT EARNINGS PLAN, et al., Defendants.**

**No. CV–04–00424–PHX–ROS.**

United States District Court, D. Arizona.

March 16, 2010.

Daniel Lee Bonnett, Jennifer Lynn Kroll, Susan Joan Martin, Martin & Bonnett PLLC, Phoenix, AZ, for Plaintiffs.

Amy Covert, Proskauer Rose LLP, Newark, NJ, Azeez Hayne, Michael L. Banks, William J. Delany, Morgan Lewis & Bockius LLP, Philadelphia, PA, Christopher Landau, Craig S. Primis, Michael F. Williams, Padraic B. Fennelly, Eunice H. Eun, Leila K. Thompson, Kirkland & Ellis LLP, Washington, D.C., David B. Rosenbaum, Dawn L. Dauphine, Osborn Maledon PA, Phoenix, AZ, Howard Shapiro, Robert W. Rachal, Proskauer Rose LLP, New Orleans, LA, John Ferreira, Morgan Lewis & Bockius LLP, Pittsburgh, PA, for Defendants.

## ORDER

ROSLYN O. SILVER, District Judge.

The Court appointed Magistrate Judge David Duncan to act as a Special Master in resolving a discovery dispute. Magistrate Judge Duncan prepared a detailed and well-reasoned order addressing each docu-

ment at issue. Plaintiffs request the Court modify Magistrate Judge Duncan's order and require the production of all documents at issue. Defendants request the Court adopt Magistrate Judge Duncan's ruling in its entirety. For the following reasons, the Court will adopt portions of Magistrate Judge Duncan's Order but require production of additional documents.

## BACKGROUND

This lawsuit involves claims by Plaintiffs that Defendants violated ERISA by adopting amendments to benefit plans which reduced Plaintiffs' benefits. The date the amendments were adopted is crucial to proving Plaintiffs' case. Beginning in 2001, Plaintiffs' counsel began requesting information regarding the amendments. In October 2001, Defendants learned that a number of retirees had decided to challenge the legality of the amendments. On July 26, 2002, Plaintiffs' counsel filed an administrative claim on behalf of several hundred employees. The administrative claim argued, in part, that certain plan amendments violated numerous statutory provisions. Because the administrative claim asserted statutory violations, administrative exhaustion may not have been required.[1] Recognizing this, the administrative claim stated "[a]lthough we were not required to bring the Retirees' legal claims for violations of ERISA to your attention before filing suit, we do so in a good faith effort to resolve these matters amicably, without resort to litigation."

Upon reviewing the administrative claim, Honeywell's Assistant General Counsel concluded that "class litigation ... was inevitable." (Doc. 225–2 at 5). Based on the belief that litigation was "virtually certain," Defendants retained outside counsel to assess their "potential exposure" and "to assist in preparing to defend [the] litigation." (*Id.* at 6). Outside counsel prepared documents for use in settlement discussions and provided assistance "in drafting responses to [the] Retirees' administrative claims." (Doc. 225–4 at 3). Outside counsel also claims it began preparing documents for use in litigation. (Doc. 225–4 at 4).

The formal denial of Plaintiffs' claims was issued on January 24, 2003. The denial advised Plaintiffs "they [had] a right to file a written appeal." (Doc. 16b Ex. K). If the parties submitted an appeal, the plan administrator would "reexamine all facts [relevant] to the appeal and make a final determination as to whether the denial of benefits is justified under the circumstances." (*Id.*) The denial cautioned that Plaintiffs "must exhaust their appeal remedies before they [could] bring a court action." Plaintiffs filed an administrative appeal on July 1, 2003.

Defendants issued a final administrative denial on October 29, 2003. That letter referred to the earlier denial as the "Preliminary Decision." The letter also stated the plan administrator had engaged in a "careful review" of Plaintiffs' claims. Plaintiffs filed this suit in March 2004.

Some time after commencement of their suit, Plaintiffs submitted notice of a discovery dispute. (Doc. 169). According to that notice, Plaintiffs believed they were entitled to "documents generated prior to denial of Plaintiff's administrative appeal" and "documents Defendants claim contain advice to Honeywell as Plan sponsor, not as Plan Administrator." (*Id.* at 3). Defendants responded that the documents Plaintiffs sought were "prepared in anticipation of litigation." (*Id.* at 4). According to Defendants, the initial administrative

---

**1.** The Ninth Circuit does not require administrative exhaustion of statutory violation claims. *Horan v. Kaiser Steel Ret. Plan,* 947 F.2d 1412, 1416 (9th Cir.1991).

claim, and the surrounding circumstances, "explicitly raised the specter of litigation." Thus, Defendants believed certain documents connected to the administrative claim were not subject to disclosure. (*Id.*)

The discovery dispute was not resolved at that time as other aspects of the litigation consumed the parties' attention. After a partial settlement, Plaintiffs again sought production of "documents generated or reviewed during the ERISA claims process." (Doc. 332 at 5). The Court directed Defendants to submit the documents for an *in camera* review. (Doc. 392). On February 3, 2009, the Court appointed Magistrate Judge Duncan as a special master to resolve the dispute. After hearing from the parties, Magistrate Judge Duncan issued his order.

Magistrate Judge Duncan began by analyzing the scope of the fiduciary exception.[2] As recognized in the order, "the fiduciary exception provides that an employer acting in the capacity of an ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir.1999). "Decisions regarding a benefit determination ... are fiduciary functions." (Doc. 528 at 3). Thus, communications regarding administrative claims normally would be subject to the fiduciary exception. But Magistrate Judge Duncan rejected Plaintiffs' assertion "that all communications prior to a benefit determination fall within the fiduciary exception." (*Id.* at 4). Instead, Magistrate Judge Duncan concluded that "[w]hen the fiduciary is faced with a threat of litigation and seeks legal advice for its own protec-

tion against plan beneficiaries, regardless of whether that threat of litigation occurs before, during, or after the administrative claims process, the attorney-client privilege reasserts itself." (*Id.*) Once there is a "divergence of interests" between a beneficiary and the plan administrator, the fiduciary exception does not apply. (*Id.*)

Based on this understanding, Magistrate Judge Duncan concluded there had been a divergence of interests even before the administrative claim had been filed. Thus, a wide variety of documents were deemed protected.[3] The Court must "decide de novo" whether the documents should be produced. Fed. R. Civ. Pro. 53(f).

## ANALYSIS

■ The starting point for resolving the current dispute is the "fiduciary exception" to the attorney-client privilege. *Mett*, 178 F.3d 1058, 1063 (9th Cir.1999). Generally, the exception applies when the plan administrator is performing fiduciary functions, such as claims administration, but does not apply when the plan administrator is performing settlor functions, such as the adoption, modification, or termination of a plan. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (outlining settlor functions). The Ninth Circuit has identified cases addressing the exception as marking "out two ends of a spectrum." *Mett*, 178 F.3d at 1064. First, "where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity," the exception applies. *Id.* Second, "where a plan

---

**2.** There was a threshold issue of whether Honeywell was a fiduciary during the relevant period. Magistrate Judge Duncan concluded Honeywell was, in fact, a fiduciary. Neither side objected to this ruling and the Court adopts that portion of Magistrate Judge Duncan's ruling.

**3.** Magistrate Judge Duncan ordered the production of certain documents. Defendants did not agree with those rulings, but "in the interest of judicial economy, Defendants [did] not challenge those rulings." (Doc. 532 at 2).

fiduciary retains counsel in order to defend herself against the plan beneficiary," the exception does not apply. *Id.* Determining where on the spectrum particular communications fall depends on the "context and content" of the communications. *Id.*

▪▪▪ There is no Ninth Circuit authority addressing where on the spectrum materials involving administrative claims fall. But other courts have addressed the issue and adopted a test that requires examination of the interests of the plan participant and plan administrator at the time of the administrative claim. The general test is that "when the interests of the ERISA plan fiduciary and the plan beneficiaries have *diverged sufficiently* such that the fiduciary ... [is acting] in its own interest to defend itself against the plan beneficiaries, then the attorney-client privilege remains intact." *Tatum v. R.J. Reynolds Tobacco Co.,* 247 F.R.D. 488, 497 (M.D.N.C.2008) (emphasis added). The interests of plan participants and plan administrators undoubtedly diverge sufficiently upon the final denial of an administrative claim or upon the initiation of litigation. *See, e.g., Geissal v. Moore Medical Corp.,* 192 F.R.D. 620, 625–26 (E.D.Mo.2000) (ruling post-administrative claim denial advice privileged). The more difficult issue, and the issue presented here, is whether the interests can diverge prior to the final denial of an administrative claim.

▪▪ It is well established that a benefit determination is a fiduciary act. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 218, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Varity Corp. v. Howe,* 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("[A] plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents."). Therefore, the plan administrator's records generated during the handling and resolution of an administrative claim generally qualify for disclosure under the exception. This includes communications between a plan administrator and its counsel regarding an administrative claim. Despite this, Defendants argue the communications regarding Plaintiffs' administrative claims are not subject to the exception. Defendants believe the sequence of events in this case is such that the parties' interests diverged *prior* to any administrative claim. According to Defendants, they "reasonably anticipated litigation" even before the administrative claim was filed. (Doc. 538 at 2). Defendants' argument is not convincing.

Courts have repeatedly rejected the argument that "the prospect of post-decisional litigation" is enough to overcome the fiduciary exception. *Geissal,* 192 F.R.D. at 625 ("Because the denial of claims is as much a part of the administration of a plan as the decision-making which results in no unhappy beneficiary, the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege."); *Lewis v. UNUM Corp. Severance Plan,* 203 F.R.D. 615 (D.Kan.2001) (same); *Tatum,* 247 F.R.D. at 500 ("Legal advice related to the ordinary administration of the plan, such as preparing a response to a beneficiary's claim, is not privileged as against the beneficiaries."). This rejection is well founded in that any other conclusion would potentially negate the exception in its entirety.

If the mere prospect of litigation were enough to overcome the fiduciary exception, the administrative claim files associated with all benefit denials would be privileged. Any sophisticated plan administrator would conduct a *pro forma* review of claims, make a record that denial of that claim would lead to litigation, and then rely on counsel to formulate respons-

es to the administrative claim. The "inevitability" of litigation would then be used to negate any application of the fiduciary exception. Assuming litigation did materialize, a court would be forced to determine whether the fear of litigation was legitimate. This time-consuming inquiry is not one courts are well-equipped to make. A straightforward application of the fiduciary exception makes much more sense.

Plan administrators have a fiduciary responsibility to resolve claims for benefits. In performing that function, a plan administrator may consult with counsel but the parties' interests cannot "diverge" for purposes of the fiduciary exception until there is, at the very least, an initial administrative decision.[4,5] Thus, Defendants must turn over all documents generated by the plan administrator, produced for the plan administrator's consideration, or reviewed by the plan administrator in connection with the initial administrative decision.[6] This includes documents generated by outside counsel given that outside counsel drafted the administrative denial letter.[7] The issue remains, however, whether documents generated or reviewed after the initial administrative decision was made are subject to the exception.

■  In the circumstances of this case, Defendants' own communications weigh against finding a divergence of interests immediately after the initial claim denial. The letter denying Plaintiffs' initial administrative claim invited an administrative appeal of that decision. Defendants do not explain why the initial claim denial letter invited an administrative appeal if Defendants had already concluded the claim would be denied. Moreover, the final claim denial stated Defendants had conducted a "careful review" of the administrative appeal. Again, Defendants do not explain how a "careful review" was conducted given that they had already concluded litigation was "inevitable." If the parties' interests had, in fact, diverged prior to the initial administrative claim, Defendants should not have engaged in the administrative process.[8] At the very least, Defendants should not have invited an appeal of the initial administrative determination.[9] The plan administrator held itself out to be making a standard benefit

---

4. The claims in this suit raised the personal liability of the fiduciaries in only the most general terms. (Doc. 16, Ex. I at 5). The vast majority of Plaintiffs' claims could not result in the fiduciaries being personally liable. Moreover, having reviewed the documents, the overriding concern *was not* the fiduciaries' personal liability but the validity of Plaintiffs' statutory claims.

5. This statement assumes the plan administrator engages in the administrative process. The interests could, of course, diverge prior to the administrative claim if the plan administrator communicates that any administrative claim would be futile.

6. This includes all documents allegedly protected by the work product privilege. Given that no administrative decision had been made, the documents could not have been created in anticipation of litigation. *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615

(D.Kan.2001) ("[T]he Plan Administrator's act of securing legal advice for the plan, and the advice rendered, prior to the plan's decision regarding benefits cannot be said to be in anticipation of litigation.").

7. In some respects, outside counsel was acting as plan administrator (*i.e.* evaluating the merits and drafting the administrative response).

8. Administrative exhaustion is an affirmative defense Defendants could have waived.

9. Of course, waiving the right to administrative exhaustion might not have been in Defendants' best interest. Defendants likely wished to preserve their right to a deferential standard of review of any benefit denial. Defendants also might have hoped that a thorough administrative rejection of Plaintiffs' claims would cause Plaintiffs to abandon the claims.

determination, unquestionably a fiduciary function. Thus, the fiduciary exception applies. Defendants must turn over all documents generated by the plan administrator, produced for the plan administrator's consideration, or reviewed by the plan administrator in connection with the final administrative decision.[10]

In light of ERISA's statutory [11] and regulatory [12] requirements, and having reviewed many of the documents at issue, Defendants' belief that these documents should remain privileged is perplexing. Many of the documents at issue were provided to outside counsel during the administrative process so counsel could assess the validity of Plaintiffs' administrative claims and draft the administrative response. These documents have not been produced to Plaintiffs, even though Defendants apparently believed they were *necessary* to determine the validity of Plaintiffs' claims. Plan participants are entitled to documents necessary to assess the validity of their claims. To hold otherwise would deny plan participants access to potentially dispositive materials. Defendants' attempt to use the attorney-client privilege to protect documents relied upon in the administrative claim process is inappropriate.

Finally, the conclusion that the fiduciary exception requires disclosure of the administrative claim materials should not be surprising to Defendants. The fiduciary exception was well-established at the time of Plaintiffs' administrative claim.[13] Thus, if Defendants believed they needed confidential legal advice concerning possible litigation, Defendants should not have allowed counsel to assist in the clear fiduciary function of claim administration.

Defendants should review the documents at issue and, if necessary, generate a new privilege log. Documents potentially privileged are documents involving a settlor function (*i.e.*, amendment of the plan), provided those documents were *not* considered in evaluating Plaintiffs' administrative claim. Also potentially privileged are any documents generated after the final administrative denial or documents generated by *separate* legal counsel during the administrative claims process if those documents involved possible litigation.

---

**10.** Once a final administrative decision was made, the parties' interests diverged. Post-administrative claim documents are not subject to the fiduciary exception.

**11.** ERISA requires "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). ERISA also requires disclosure of documents such that individuals know the important terms of their benefit plans. *See, e.g.*, 29 U.S.C. § 1021. ERISA recognizes the importance of documents by contemplating an award of daily penalties in the event a plan administrator refuses to provide copies in a timely manner. 29 U.S.C. § 1132(c).

**12.** The regulations state "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–1(h)(2)(iii). This includes all documents "relied upon in making the benefit determination" and "submitted, considered, or generated in the course of making the benefit determination." 29 C.F.R. § 2560.503–1(m)(8).

**13.** Reviewing then-recent developments, a 1998 article advised attorneys representing ERISA administrators of the need to "[r]ecognize the fact that attorney-client communications concerning plan administration issues simply will not be protected by privilege." Michael S. Beaver, *The "Fiduciary Exception" Under ERISA*, Idaho Employment Law Letter, Vol. 2, Issue 11 (Feb. 1998). A 1999 article further advised counsel to "[m]ake a special effort to segregate legal work concerning non-fiduciary matters from work concerning plan administration." Craig C. Martin & Matthew H. Metcalf, *The Fiduciary Exception to the Attorney–Client Privilege*, 34 Tort & Ins. L.J. 827, 860 (1999).

Accordingly,

**IT IS ORDERED** the Motion to Modify (Doc. 533) is **GRANTED IN PART AND DENIED IN PART.** Defendants shall disclose the documents and a new privilege log if necessary no later than March 29, 2010.

**IT IS FURTHER ORDERED** the Motion to Adopt (Doc. 532) is **GRANTED IN PART AND DENIED IN PART.**