Kenneth S. **KLEIN**, Plaintiff,

v.

The **NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY;** Standard Insurance Company; Foley & Lardner, LLP; and The Foley & Lardner LLP Long–Term Disability Plan; and Does 1 through 30, inclusive, Defendants.

Civil No. 09cv2843 W (NLS).

United States District Court, S.D. California.

June 29, 2011.

Arnold R. Levinson, Brian H. Kim, Pillsbury & Levinson LLP, San Francisco, CA, for Plaintiff.

Carol Burney Lewis, Linda M. Lawson, Meserve Mumper and Hughes, Los Angeles, CA, for Defendants.

## ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

NITA L. STORMES, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Kenneth Klein ("Klein") was a litigation partner at Defendant, Foley &

Lardner, LLP ("Foley"). Klein was insured under a group long-term disability policy issued by Defendant Northwestern Mutual Life Insurance Company ("Northwestern"). Northwestern had an agreement with Defendant Standard Insurance Company, ("Standard") whereby Standard would administer claims for Northwestern. On April 18, 2008, Klein underwent a quadruple bypass and in early May he applied for disability benefits. On January 26, 2009, Northwestern informed Klein that his claim for disability benefits was denied. On July 6, 2009 Northwestern informed Klein that the Administrative Review Unit upheld the denial of his benefits. On November 19, 2009, Klein filed this ERISA lawsuit against Defendants Northwestern, Standard, Foley; and the Foley & Lardner LLP Long-term Disability Plan (collectively "Defendants") seeking recovery of employee benefits under the long term disability plan. Klein asserts that he was improperly denied benefits under a long term disability plan and asserted claims for: 1) recovery of benefits under 29 U.S.C. § 1132(a)(1)(B); 2) equitable relief under 29 U.S.C. § 1132(a)(3) against Defendants Northwestern and Standard; 3) failure to produce documents under 29 U.S.C. § 1024(b)(4) against Northwestern, Standard and Foley. [Complaint, Docket No. 1.][1]

■ On February 2, 2011, the Court conducted a Case Management Conference and issued a Scheduling Order. [Docket No. 33.] The Scheduling Order required the parties to file a Joint Motion for Determination of four issues raised at the Case Management Conference:

1) the correct standard of review for this ERISA case; 2) application of the fiduciary exception to the attorney client

---

**1.** Klein originally filed the Complaint in state court and Defendants removed the case to this federal court. [Notice of Removal, Docket No. 1.]

privilege; 3) evidence relating to Defendants' alleged structural conflict of interest as the payor and administrator of the ERISA plan; and 4) evidence of Defendants' claims procedures, policy statements and guidelines used by Defendants in denying Plaintiff's claim.

[*Id.* at 1, fn. 1.] In accordance with that Order, the parties filed the Joint Motion for Determination currently before the Court. Defendants assert that the parties have agreed the correct standard of review in this case is an abuse of discretion standard. [Docket No. 41 at 4.] Klein has not disputed this characterization. For the purposes of this motion, the Court will assume that an abuse of discretion standard governs in this litigation.[2]

The parties have asserted 34 disputed interrogatories and 36 disputed requests for production of documents. Defendants have specifically chosen not to address all of the issues necessary for resolution of the disputed discovery. Defendants argue the Court's order only required briefing on the discovery allowed under the structural conflict of interest and the fiduciary exception to the attorney client privilege, then purportedly reserve their right to assert other immunities, such as work product, and other objections such as undue burden. Additionally, Plaintiff contends Defendants waived the attorney client privilege by producing allegedly privileged documents and by not seeking the return of such documents. Because of the simultaneous nature of the briefing, Defendants have not responded to the waiver argument.

Because of these gaps in the record, the Court is not in a position to make a final determination whether Defendants must respond to specific discovery requests. Instead, the Court will provide guidance on the complicated questions of the scope of discovery allowed into the structural conflict of interest and the application of the fiduciary exception to the attorney client privilege. The parties will then meet and confer and attempt in good faith to resolve any disputes that remain over whether responses to discovery are required. If, after an in person meet and confer between lead trial counsel, the parties are unable to resolve all the discovery issues, the parties may bring a Joint Motion for Resolution of Discovery Disputes (Number 2). The parties are both specifically cautioned that any unreasonable failure to agree with likely result in the award of sanctions.

## II. DISCUSSION

### A. Discovery Allowed in ERISA Cases Alleging Structural Conflict of Interest

#### 1. *Legal Standard of Review for Decision with Structural Conflict*

▮ Normally, no discovery is allowed in an action in federal court seeking review of a denial of benefits under an ERISA plan. An exception exists, however, where a plaintiff alleges a "structural conflict of interest." A structural conflict of interest occurs when an insurer acts as both the plan administrator and the funding source of benefits.

On the one hand, such an administrator is responsible for administering the plan so that those who deserve benefits receive them. On the other hand, such an administrator has an incentive to pay as

---

**2.** The Court makes no finding as to the correct standard of review. When an administrator does not have discretion, the court uses a *de novo* standard of review, but when the plan grants the administrator discretion, a court will use an abuse of discretion standard. *See, e.g. Abatie v. Alta Health & Life Ins. Co.* 458 F.3d 955 (9th Cir.2006)

little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers.

*Abatie v. Alta Health & Life Ins. Co.* 458 F.3d 955, 965–65 (9th Cir.2006). A reviewing court using the abuse of discretion standard must evaluate the nature, extent, and effect of the conflict in deciding how skeptically to view the conflicted administrator's decision. *Id.* at 968–69. "[W]hen reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, we must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference we accord the administrator's decision." *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 868 (9th Cir.2008.).

In evaluating how the conflict affects the level of judicial scrutiny, a court may consider evidence outside the administrative record. *Abatie,* 458 F.3d at 970. Among the factors to be considered are: evidence of malice, self-dealing, or parsimonious claims-granting history, the giving of inconsistent reasons for denial of a claim; failure to adequately investigate a claim; and repeated denials to deserving participants by interpreting plan terms incorrectly. *Id.* at 967–68; *see also Bardill v. Lincoln National Life Ins.* 2011 WL 891141 (N.D.Cal. March 15, 2011) (examining evidence of malice or self dealing, consistency of reasons for denial and thoroughness of investigation). A conflict cannot be shown by showing the decision to deny benefits was wrong. *Harper v. Unum Life Ins. Co. Of America,* 2007 WL 1792004 (June 19, 2007, E.D.Cal.). Moreover, after a court has assessed the effect of the conflict on the amount of discretion afforded, it may not use any evidence outside the administrative record when deciding if the decision to deny benefits was an

abuse of discretion. *Abatie,* 458 F.3d at 970. Accordingly, discovery into how and why the decision was made is not allowed except when such evidence is being sought to show the existence of a conflict. *See Harper,* 2007 WL 1792004 at *5; *Sheakalee v. Fortis Benefits Ins. Co.,* 2008 WL 4279383 at *5 (E.D.Cal. Sept.16, 2008).

### 2. Scope of Discovery Allowed

Plaintiffs must be able to obtain information through discovery relating to the extent and nature of the conflict. *Groom v. Standard Ins. Co.,* 492 F.Supp.2d 1202, 1205–06 (C.D.Cal.,2007) ("relevant inquiries might include inquiries designed to obtain 'evidence of malice, of self-dealing, or of a parsimonious claims-granting history' ") (*quoting Abatie* 458 F.3d at 968); *see also Leu v. Cox Long–Term Disability Plan,* 2009 WL 2219288 at *4 (D.Ariz. July 24, 2009) (allowing discovery into "incentivized parsimonious claim management."); *Sheakalee v. Fortis Benefits Ins. Co.,* 2008 WL at *3 (E.D.Cal. Sept. 16, 2008). Discovery, however, cannot be unlimited and plaintiffs have no right to engage in extensive fishing expeditions. *Leu,* 2009 WL 2219288 at *3.

Defendants argue that only limited discovery should be allowed because ERISA benefits should not be litigated in expensive, lengthy court proceedings. Defendants assert: "Rather, a primary goal of ERISA is 'to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.' " (Defs' Brief at 16, *quoting Chadwick v. Metropolitan Life Ins. Co.,* 498 F.Supp.2d 1309, 1318 (E.D.Cal.2007)). It seems rather incongruous for Defendants to argue that Klein can have only limited discovery because, as a beneficiary, he is entitled to an inexpensive determination of his benefits. In fact, the Supreme Court has rejected the advancement of the

speed of a determination at the expense a beneficiary's entitlement to benefits. *Metropolitan Life Ins. Co. v. Glenn* 554 U.S. 105, 113–114, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (finding "Congress' desire to offer employees enhanced protection for their benefits" outweighed ERISA's effort to avoid complex review proceedings as well as fears that employers would be discouraged from creating benefits plans) (citation omitted.)

Defendants next argue that discovery should only be allowed when a Plaintiff has shown a sufficient need. (Def.'s Brief at 17, *quoting Baldoni v. Unumprovident, Illinois Tool Works, Inc.* 2007 WL 649295 (D.Or. Feb. 26, 2007.)) In *Baldoni*, however, the court denied the discovery sought because Plaintiff already had sufficient information from the public realm.[3] Similarly, Defendants' reliance on *Bartholomew v. Unum Life Ins. Co.*, 579 F.Supp.2d 1339, 1342 (W.D.Wash.2008) is also unavailing. In that case, the court found that there was no right to any discovery into the structural conflict. The *Bartholomew* court's limitation of the plaintiff to evidence already in his or her possession is contrary to the vast weight of authority since *Abatie* as well as specific guidance from the Ninth Circuit. *Burke v. Pitney Bowes Inc. Long–Term Disability Plan* 544 F.3d 1016, 1028 n. 15 (9th Cir.2008); *Welch v. Metro. Life Ins. Co.* 480 F.3d 942, 949–50 (9th Cir.2007) (some discovery may be appropriate); *Miranda v. First Reliance Standard Life Ins. Co.*, 2011 WL 2003228 at *2 (N.D.Cal. May 23, 2011) (court has discretion to allow discovery.)

Courts are still exploring and defining the appropriate limits on discovery into the structural conflict. One list often used comes from *Wilcox v. Metropolitan Life Ins. Co.*, where the court provided an instructive list of areas into which plaintiffs could conduct discovery:

(1) [W]hether any of the employees or consultants involved in deciding Plaintiff's claim had a financial incentive to deny the claim; (2) Defendant's general approval and termination rates for long-term disability claims, and separately, for long-term disability claims involving [plaintiff's particular medical issue]; (3) steps Defendant has taken to reduce bias and promote accuracy, such as walling off claims administrators from those interested in firm finances; and (4) any factors or evidence considered by Defendant in denying Plaintiff's claim that are not contained in the administrative record. Defendant shall also produce to Plaintiff any evidence outside the administrative record that Defendant intends to use in showing that the structural conflict did not affect its decision in this case.

*Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 627 (N.D.Cal. Feb.12, 2010), *quoting Wilcox*, 2009 WL 57053, at *3 (D.Ariz. Jan. 8, 2009).

■■■■■ Some areas of inquiry have been broadly accepted as appropriate. Information about the compensation of in-house medical personnel, including how much money they receive and what percentage of their total salary is provided by Defendants is relevant. *Harper*, 2007 WL 1792004 at *5; *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 628 (N.D.Cal. Feb. 12, 2010). Similarly, the performance evaluations of the medical professionals involved in handling the plaintiff's claims are also fair game. *Zewdu*, 264 F.R.D. at 628; *Fortlage v. Heller Ehrman LLP*, 2011 WL 1752652 at *2

---

**3.** On appeal, the Ninth Circuit noted that *Abatie* grants the district court discretion to allow discovery and upheld the district court's determination that the publicly available information was sufficient. *Baldoni v. Unum-Provident*, 318 Fed.Appx. 575 (9th Cir.2009).

(N.D.Cal. May 9, 2011); *Knopp v. Life Insurance Co. of North America*, 2009 WL 5215395 at *4 (N.D.Cal. Dec. 28, 2009); *Sullivan v. Deutsche Bank Americas Holding Corp.*, 2010 WL 391821 at *2 (S.D.Cal. Feb. 2, 2010)

■ Additionally, the number of claims handled and the number of claims approved by the claims administrator are also proper subjects of discovery and, under certain circumstances, the approval rate by doctor may be appropriate as well. *Fortlage*, 2011 WL 1752652 at *2; *see also Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 649 (E.D.Cal. 2009), *overruled in part* 2009 WL 1362696 (May 14, 2009) (allowing statistical information as to number of claims and approval rate, but not allowing information about each doctor's rate without evidence that the employer knew about the doctor's alleged bias). Similarly, a sampling of reports a doctor has prepared in other claims may also be appropriate. *Fortlage* at *1.

■ Moreover, the training given to medical personal in relation to reviewing claims of disability is a proper subject of discovery. *Zewdu*, 264 F.R.D. at 628. Because whether procedures were followed is relevant, requests for all documents related to procedures manuals, guidelines and other documents relating to the handling of claims involving the particular disability are also relevant. *Id.; see also Kroll v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2010 WL 1233871 at * 1 (N.D.Cal. March 26, 2010).

■ Similarly, there are topics of discovery that courts have generally found impermissible, such as the underwriting file. *Zewdu*, 264 F.R.D. at 627. Certain

types of request are overbroad, including all information about all employees involved, including their contact information, employment history and educational background. *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 382 (C.D.Cal.2009). Similarly, a request for every claim ever denied is improper. *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 383 (C.D.Cal.2009) (allowing statistical information, but not actual claims).

■ In summary, while an investigation into a structural conflict of interest is not a wide ranging fishing expedition, a plaintiff must be given the chance to discover relevant evidence as to the nature, extent and effect of the conflict. A plaintiff is entitled to seek evidence of malice or self-dealing or of a history of parsimonious claims granting. At a minimum, discovery is allowed into the compensation, guidance, and performance evaluations given to the people involved in the handling of Klein's claim as well as at least statistical information as to the number of claims handled and denied.

## B. The Fiduciary Exception to the Attorney Client Privilege

### 1. *The Rationales for the Fiduciary Exception*

■ The attorney-client privilege shields from disclosure any confidential communications between a client and its attorney.[4] The attorney-client privilege is "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir.1997) (*citing Upjohn Co. v. United States*, 449 U.S. 383, 391, 101 S.Ct. 677, 66 L.Ed.2d

---

**4.** The parties do not appear to question the application of the privilege in the absence of the fiduciary exception. Accordingly, the court will not discuss the requirements for application of the privilege in general.

584 (1981)). Once the attorney-client privilege has been established, the party seeking to pierce it bears the burden of showing an exception exists. One such exception exists when an ERISA trustee seeks an attorney's advice on a matter of plan administration. *United States v. Mett,* 178 F.3d 1058 (9th Cir.1999). There are two asserted rationales for this exception: 1) the fiduciary duty to disclose all matters of plan administration overrides the attorney-client privilege; and 2) the fiduciary is not the real client when the advice is sought on behalf of the beneficiaries of the trust. *Id.* at 1063. Under either rationale, the privilege reasserts itself when the fiduciary seeks advice on matters of personal liability.

### 2. *The Fiduciary Exception Applies to Defendants*

Defendants assert that the fiduciary exception does not apply in cases, such as this one, where the ERISA fiduciary is an insurance company, relying upon *Wachtel v. Health Net, Inc.,* 482 F.3d 225 (3rd Cir.2007). The Third Circuit reasoned that any time the insurance company sought legal advice, it was the real client and the beneficiaries of the plan were never the real client. The *Wachtel* court gave four reasons for its rejection of the fiduciary exception to insurance company fiduciaries. The Court first reasoned that, because the insurer does not manage trust assets, but instead owns the assets from which benefits are paid, there is no reason to apply the exception. In contrast, when a trustee manages assets in which he has no personal interest, he cannot be the real client for the purposes of any legal advice. *Id.* at 234. The second reason is that an insurance company always has a structural conflict of interest arising from both determining eligibility of benefits and paying those benefits from its own funds. Thus, the court found that the conflict of interest

undermines the argument that the beneficiary is the true client. *Id.* at 235. The third basis for the *Wachtel* rule is that insurers handle multiple benefit plans to be paid out of the same pool of assets. Thus, according to the *Wachtel* court, the insurance company fiduciary always has interests distinct from those of the beneficiaries of any particular plan. The final basis of *Wachtel's* holding is that the insurance company fiduciary always pays for legal advice using its own assets, another factor indicating that the fiduciary is the real client. *Id.* at 236.

The *Wachtel* court then rejected the second rationale for the fiduciary exception, finding that because an insurer servicing an ERISA plan does not need to hold the assets in trust, Congress did not intend to impose trustee-like disclosure obligations on them. The Court also found that restricting the attorney-client privilege in a complex area of law is undesirable and might lead insurance companies to either act without informing their attorneys or to cease servicing such plans altogether.

The Court declines to adopt the holding of the Third Circuit. First, the Third Circuit has never adopted the fiduciary exception. Accordingly, it would be illogical to accept the limitation from a Circuit lacking any jurisprudence as to the exception. More importantly, the Third Circuit's holding would essentially negate the first rationale for the exception, that the ERISA fiduciary owes a duty of disclosure to plan beneficiaries. The Third Circuit acknowledges that an insurance company with discretionary authority to determine claims is an ERISA fiduciary. Nonetheless, the *Wachtel* court abrogates the fiduciary duty of disclosure by finding that the insurance company ERISA fiduciary does not have trustee-like duties of disclosure. As the Second Circuit held: "The employer's ability to invoke the attorney-client

privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries." *In re Long Island Lighting Co., et al.,* 129 F.3d 268, 271 (2d Cir.1997). Moreover, there is no reason to assume that Congress intended to exempt insurance companies from the disclosure obligations of ERISA simply because it exempted them from the requirement to hold plan assets in trust. *See Smith v. Jefferson Pilot Financial Ins. Co.* 245 F.R.D. 45, 51 (D.Mass.2007) (finding no statutory basis to apply the fiduciary exemption to all ERISA fiduciaries except insurers.)

Moreover, the *Wachtel* court implicitly finds that an insurer is always seeking advice of counsel for its own personal defense. This assumption makes no sense in relation to the fiduciary duty the insurer is bound by when deciding whether benefits should be awarded to a claimant. As a policy matter, it would be inconsistent with Congressional intent to protect ERISA beneficiaries and to mandate disclosure of information concerning plan administration, while at the same time to allow an ERISA plan to hide attorney-client communications relating to the decision of whether a beneficiary is entitled to benefits by contracting that duty out to an insurance company.

Finally, no court has adopted, or even cited with approval, the *Wachtel* court's reasoning that plan beneficiaries are not entitled to the benefit of the fiduciary exception when the plan is administered by an insurance company. Every court that has examined this theory has rejected it. In *Smith v. Jefferson Pilot Financial Ins. Co.,* 245 F.R.D. 45 (D.Mass.2007) the

court thoughtfully examined all of the reasoning in *Wachtel* and rejected each basis for refusing to apply to fiduciary exception to insurance company ERISA fiduciaries. The *Smith* court noted that *Wachtel* had cited "nothing in the statute or in its implementing regulations relating to disclosure that would exempt insurance companies from any of ERISA's disclosure requirements or otherwise distinguishes between types of fiduciaries for purposes of disclosure." *Smith,* 245 F.R.D. at 51; *see also Moss v. Unum Life Ins. Co.,* 2011 WL 321738 at *4 (W.D.Ky. Jan. 28, 2011) ("Court agrees with the finding in Smith that there is no statutory basis for applying the fiduciary exception to all fiduciaries except insurers, i.e., the duty to disclose is the same.")[5] The *Smith* court reasoned, in the absence of any statutory support for applying the fiduciary exemption to all ERISA fiduciaries except insurers, the disclosure obligations of ERISA fiduciaries must govern. Under Section 503, any participant whose claim is denied is entitled to a "full and fair review" of the decision. Moreover, under Department of Labor regulations implementing the "full and fair review" requirement, each claimant must be provided "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." Relevant information includes both materials " 'relied upon in making the benefit determination, as well as those 'submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination.' " *Id.,* (citations omitted.) The *Smith* court concluded that providing the claimant

---

5. The *Moss* court found it unnecessary to adopt *Wachtel* or *Smith,* because an *in camera* review of the documents revealed that they were not subject to the fiduciary exception because they related to the pending law suit and not matters of plan administration.

with the evidence upon which the decision-maker relied in denying the claim was essential to the goal of providing a full and fair review and an opportunity to claimants to challenge the decision to deny benefits. Because this goal would be frustrated if insurers were able to limit access to such information by claiming attorney-client privilege, the *Smith* court rejected the *Wachtel* court's conclusion that the fiduciary exception did not apply to insurer fiduciaries.

The *Smith* court was equally unpersuaded by the *Wachtel* court's finding that the beneficiary is not the real client. The first basis: that insurer is not the trustee, but the owner of the assets was rejected because "all fiduciaries have an obligation to properly and appropriately manage the assets which are to be available for the plan beneficiaries." *Id.* at 52. The *Smith* court also rejected the third basis: that insurers always have interests distinct from the beneficiaries of a plan because they handle multiple benefit plans, finding that non-insurer fiduciaries have obligations to multiple claimants who must also be paid out of the same pool of assets.[6]

While the Ninth Circuit has not addressed this issue, at least one district court decision rejected the argument that the fiduciary exception does not apply to insurance company ERISA fiduciaries. *Neathery v. Chevron Texaco Corp. Group Acc. Policy No. OK826458*, 2006 WL 4690828 (S.D.Cal. July 11, 2006).[7]

3. *The Scope of the Fiduciary Exception*

The Ninth Circuit has laid out the two ends of the spectrum:

On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where the plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

*United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir.1999). Thus, when there is clearly no issue of fiduciary liability, the exception applies and when it is clear that the fiduciary is seeking to defend against personal liability, the exception does not apply. The task of sorting out when the exception applies in the gray areas in between was left for another day. The Ninth Circuit provided guidance by rejecting an expansive view of the fiduciary exception that would include all advice "related to" fiduciary matters. The Ninth Circuit listed four reasons for its rejection of such an expansive view: 1) any legal advice concerning an ERISA plan could "relate to" the administration of the plan; 2) only communications where the trustee is acting as the representative of the beneficia-

---

6. The *Smith* court found that the second factor: the structural conflict implies that the beneficiary is not the client has less force in the First Circuit, where the conflict is viewed as less serious and that the fourth factor: the insurer pays for the attorney with its own funds, did not apply to the facts of that case.

7. The court applied the fiduciary exception to the insurance company defendants. Although the issue is not specifically addressed in the

order, the defendant had argued that the fiduciary exemption should not apply to insurer ERISA fiduciaries. [Case No. 05–cv–1883, Docket No. 59 at 11–13.] The court implicitly rejected defendants' argument that the fiduciary exception did not apply to insurance companies in finding that the fiduciary exception applied to all pre-decisional communications about the investigation and determination of the claim at issue.

ries should be excluded from the privilege and not the communications where a trustee seeks legal advice for her own protection; 3) hard cases must be resolved in favor of the privilege, not in favor of disclosure; and 4) as a matter of policy, an uncertain privilege will discourage trustees from seeking legal advice, to the detriment of the beneficiaries. *Id.* at 1065.

Under either rationale, the true divergence of interests will end the application of the exception. If the advice is sought to defend against personal liability, it is not a matter of plan administration and the beneficiaries are not the true clients. The difficult question is when the interests of the trustee and the beneficiary diverge sufficiently for the privilege to reassert itself. Courts have regularly rejected the notion that the possibility a claim will be denied results in a divergence of interests, finding:

> This contradicts the principle that the plan's administrator or trustee administers the plan in the beneficiaries' best interests. The prospects of post-decisional litigation against the plan by the disappointed beneficiary can exist whenever the plan denies a claim. Because the denial of claims is as much a part of the administration of a plan as the decision-making which results in no unhappy beneficiary, the prospects of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege.

*Neathery v. Chevron Texaco Corp. Group Acc. Policy No. OK826458,* 2006 WL 4690828 at *2 (S.D.Cal. July 11, 2006), *quoting Geissal v. Moore Med. Corp.* 192

F.R.D. 620, 624 (E.D.Mo.2000); *Tatum v. R.J. Reynolds Tobacco Co.* 247 F.R.D. 488, 494 (M.D.N.C.2008) (recognizing fiduciary exception and requiring divergence of interests and a threat of litigation for the privilege to reassert itself); *Lewis v. UNUM Corp. Severance Plan,* 203 F.R.D. 615, 620 (D.Kan.2001) (rejecting argument that pre-decisional legal advice is secured for purpose of defending against possible claim of unhappy beneficiary because all communications about denials of claims would be privileged).

Similarly, most courts agree that the exception no longer applies after the final denial of an administrative claim. As one court held:

> The interests of the plan participants and plan administrators undoubtedly diverge sufficiently upon the final denial of an administrative claim or upon the initiation of litigation. The more difficult issues, and the issue presented here, is whether the interests can diverge prior to the final denial of an administrative claim.

*Allen v. Honeywell Retirement Earnings Plan,* 698 F.Supp.2d 1197, 1202 (D.Ariz. 2010) (citation omitted.) The Allen court held that in all cases, the exception covers all documents related to the claims decision and generated prior to the initial decision on benefits.[8] *Id.; see also Smith v. Jefferson Pilot Financial Ins. Co.,* 245 F.R.D. 45, 48 (D.Mass.2007); *Tebo v. Sedgwick Claims Management Servs., Inc.,* 2010 WL 2036961 at * 3 n. 5 (D.Mass. May 20, 2010). The Allen court also held that, because the defendant had invited an appeal of the original denial and the final denial stated a "careful review" of the administrative appeal had been conducted,

---

**8.** Defendants correctly argue that *Mett* found a pre-litigation memo outside the fiduciary exception. *Mett,* however, did not involve the denial of a claim for benefits. Instead, *Mett* was a criminal case that involved the with-

drawal of $1.6 million from the pension plans. In that context, litigation was reasonably anticipated when beneficiaries "had begun asking difficult questions regarding the financial condition of the plans."

the interests had not diverged until after the appeal had been denied. *Id.* at 1202–03; *see also Neathery v. Chevron Texaco Corp. Group Acc. Policy No. OK826458,* 2006 WL 4690828 at *2 (S.D.Cal. July 11, 2006) (all communications prior to the final determination of benefits are subject to the exception); *Asuncion v. Metropolitan Life Ins. Co.* 493 F.Supp.2d 716, 720–21 (S.D.N.Y.2007) (communications prior to final benefits determination subject to exception.) *Geissal v. Moore Med. Corp.,* 192 F.R.D. 620, 625–26 (E.D.Mo.2000). Finally, the *Allen* court reasoned:

> Plan participants are entitled to documents necessary to assess the validity of their claims. To hold otherwise would deny plan participants access to potentially dispositive materials. Defendants' attempt to use the attorney-client privilege to protect documents relied upon in the administrative claim process is inappropriate.

*Allen,* 698 F.Supp.2d at 1203 (rejecting claim that documents generated during claim determination could be created in anticipation of litigation).

 The Court is persuaded that most documents prior to the final determination of the claim will fall within the exception. The Ninth Circuit, however, requires that each communication be examined individually because "the nature of the particular attorney-client communication" is dispositive. *Mett,* 178 F.3d at 1065. Nonetheless, whether the communication was before or after the final benefits determination is a strong indicator of whether the exception will apply. Other factors to be considered include evidence that: 1) the threat of litigation was more than a remote possibility; 2) the interests of the beneficiary and ERISA fiduciary had diverged significantly; 3) the documents or communications were not necessary to or relied upon in the administrative claim process; and 4) the documents relate to a settlor function (i.e., amendment of the plan) and were not considered in evaluating the claim at issue. *See id.*

Defendants argue that their interests and Klein's interests diverged prior to the decision to deny benefits due to Klein's allegedly aggressive posture when communicating with Northwestern benefits analysts in September of 2008. Defendants argue that Klein's statements that he was a litigation partner and he would not want to be in the shoes of the analyst on the witness stand were sufficient to mark the end of the fiduciary exception. The court does not agree. Any claim for benefits may be denied and any claimant could possibly sue over the denial. The fact that Klein used the phrase "witness stand" is an insufficient basis for denying him documents used in the adjudication of his claim. Defendants argue for the end of the exception because Klein was treating the claim as if it had already been denied. This argument fails to recognize that while the claim was still being adjudicated, Defendants were acting as ERISA fiduciaries, preparing a response to the claim, and acting in the ordinary administration of the plan. Moreover, as explained above, the nature of each communication will have to be examined and, accordingly, a rule that all documents after September of 2008 are not privileged would violate Ninth Circuit precedent.

## C. Guidance for the Meet and Confer Effort

The parties presented complex issues in an evolving area of law and cannot be faulted for failing to reach agreement in light of the uncertainty in the law. The court has now provided significant guidance. First, discovery is appropriate in this case in order for Klein to support his argument that the structural conflict of interest affected the decision to deny benefits and, therefore, the conflicted administrator's decision should be viewed with

great skepticism. Areas of inquiry that are generally permissible include: 1) inquiries designed to obtain evidence of malice, of self-dealing, or of a parsimonious claims-granting history; 2) performance evaluations and compensation of personnel involved in handled the claim at issue; 3) statistical information about claims granted or denied; and 4) training given to personnel in relation to granting or denying claims. Broad fishing expeditions, however, are not allowed. Similarly, seeking all information about personnel or all claims denied is too broad.

■ Second, the fiduciary exception to the attorney-client privilege is applicable to Defendants as insurance company ERISA fiduciaries. The mere possibility of litigation is insufficient to find that the interests of the fiduciary and the beneficiary have diverged such that the exception no longer applies. When there is evidence of diverging interests, more than a remote possibility of litigation, and the communication does not relate to the determination of the claim, the privilege reasserts itself and the exception no longer applies. When communications were generated prior to the final denial of the claim, that fact will weigh heavily toward a finding that the communications are not privileged. If Defendants seek to withhold documents after the meet and confer process has been concluded, they will need to seek court permission to submit those documents for in camera review. If the court finds that the assertion of the privilege is frivolous, sanctions will be issued.

Additionally, Defendants will have an opportunity to assert that a particular request is unduly burdensome, but each such assertion must be supported by competent evidence of the specific burden presented. General allegations of undue burden will not suffice.

Finally, the court expects that the vast majority of the disputed interrogatories and document requests will be resolved by the meet and confer effort. The parties are urged to find common ground and resolve as many disputes as possible and the Court reiterates the warning that any unreasonable failure to agree will likely result in sanctions.

## D. Waiver of the Attorney Client Privilege

Klein claims that Defendants have waived attorney-client privilege by producing certain privileged documents and by failing to seek the return of those documents for over a year. In response to a request from Klein, Defendants produced a portion of the claims file to Klein in December of 2008. A "Confidential Request for Group Legal Review" was included in the production. (Klein Decl. ¶¶ 2–3.) In March of 2009, Klein received from Defendants a purported complete copy of the claim file. It did not contain the Confidential Request for Group Legal Review. Klein attached this document to an opposition to Defendants' Motion to Dismiss two causes of action. [Docket 15–3.] Klein claims Defendants have never requested the return of the document. Although Klein claims privileged "documents" have been produced, he does not identify any documents other than the Confidential Request for Group Legal Review. Defendants have not had the opportunity to respond to the waiver argument. Whether the inadvertent disclosure effected a waiver and, if so, the scope of that waiver presents complex questions. Accordingly, this issue is not ripe for adjudication at this time. The parties shall meet and confer as to the alleged waiver.

## E. Production under a Protective Order

■ The parties have also disputed whether certain documents should be produced as confidential under a protective order. The public policy favoring accessi-

bility of court documents has lead to the presumption that documents produced in discovery are public. *Phillips ex rel. Estates of Byrd v. General Motors Corp.* 307 F.3d 1206, 1210 (9th Cir.2002). Under Rule 26, upon a showing of good cause a court may require "trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R.Civ.P. 26(c)(1)(G). For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if the protection is not granted. *Id.* at 1210–11; *see also Beckman Indus., Inc. v. International Ins. Co.* 966 F.2d 470, 476 (9th Cir.1992) (broad allegations of harm without specific examples or reasoning do not satisfy the Rule 26(c) test.) In the specific context of review of ERISA decisions, at least one court has allowed the confidential information of guidelines used to determine benefits to be produced as confidential. *Duran,* 258 F.R.D. at 383.

As the party seeking to protect materials from disclosure, Defendants bear the burden of showing specifically how they will be harmed if such protection is not granted. The Court expects that the parties can resolve this issue without need of court intervention. Additionally, as there is no protective order on file in this case yet, the parties are ordered to meet and confer and to submit a joint motion for a protective order no later than three weeks after the date of this Order. If the parties cannot agree on all the terms of the protective order, the Joint Motion can list the issues in need of court intervention.

## III. CONCLUSION

For the foregoing reasons, and good cause appearing, It Is Hereby Ordered:

1. The parties shall meet and confer in an effort to resolve the pending discovery disputes. The court expects that the guidance provided in this Order will substantially reduce the number of discovery requests at issue;

2. The in person meet and confer of lead trial counsel shall take place no later than *July 20, 2011.*

3. If the parties cannot resolve all of their disputes, they may file a Joint Motion for Determination of Discovery Dispute Number 2. This Motion shall be filed in compliance with the Chambers Rules regarding such motions and shall be filed no later than *August 3, 2011.*

4. No later than *July 20, 2011,* the parties shall file a Joint Motion for Entry of Protective Order.

IT IS SO ORDERED.